Alberta Penny RICH et al., Appellants,

v.

CON–STAN INDUSTRIES, Inc., Appellee.

No. 445.

Court of Civil Appeals of Texas.

Tyler.

Dec. 31, 1969.

Strasburger, Price, Kelton, Martin & Unis, Royal H. Brin, Jr., Thomas Earl Bentley, Dallas, for Alberta Penny Rich.

Key, Carr, Evans & Fouts, Donald M. Hunt, Lubbock, for appellee.

DUNAGAN, Chief Justice.

This is a summary judgment case. Con-Stan Industries, Inc. sued Alberta Penny Rich in the 137th District Court of Lubbock County, Texas, to (1) establish that a California judgment against Alberta Penny Rich was entitled to full faith and credit, and (2) enjoin Alberta Penny Rich and her two distributors, Merle Hopkins and Ruby Stagner from the unauthorized use of two registered trademarks belonging to Con-Stan Industries, to-wit, "Sculptress" and "Banderin".

Appellee's petition alleged various acts that it contended constituted unfair competition and infringement of trademarks and requested such acts be restrained. Appellee also attached a copy of a final and valid judgment rendered by a superior court of the State of California dated December 22, 1966. In support of its motion for summary judgment appellee offered the following: (1) affidavit by the president of Con-Stan Industries with attached copies of contracts signed by the parties not before us, Stagner and Hopkins. Also attached with the brochure supposedly used by Penny Rich which contained names on which appellee contended it had a trademark to-wit: "Sculptress" and "Banderin"; (2) an affidavit by Aubrey Fouts, attorney for Con-Stan, which has attached to it an authenticated copy of the California judgment. Said judgment recites verbatim the relief granted in the first part of appellee's summary judgment, upon which this appeal is taken. The second part of

the summary judgment granted by the trial court has a provision restraining and enjoining Penny Rich, Merle Hopkins and Ruby Stagner from using the words "Sculptress" or "Banderin" in promotion of products not purchased from Con-Stan, which the judgment recites are trademarks of Con-Stan. Mr. Fouts' affidavit also has attached to it a document showing that "Sculptress" and "Banderin" have registered trademark numbers in the United States Patent office. Also Mr. Fouts in his affidavit says, "I have verified that these trademarks were registered with the United States Patent office on the dates shown on the attached documents"; (3) there are depositions of Mrs. Hopkins and Mrs. Stagner.

Appellant filed her sworn answer which, in addition to numerous exceptions to the appellee's pleadings, consisted of a general denial and special denials.

Appellee duly and timely filed its motion for summary judgment accompanied by affidavits and other documents, which included a copy of the California judgment duly authenticated.

Appellant did not controvert defendant's motion for summary judgment and filed no controverting affidavits, depositions or other evidentiary matter, but instead, chose to rely upon her pleadings. Appellant did not show that she was unable to obtain affidavits or evidence to controvert appellee's affidavits.

After a hearing, the court granted appellee's motion for summary judgment and entered a two-part injunction decree. All defendants perfected an appeal from the judgment, but only Penny Rich filed a brief with this court.

■ Rule 166–A provides that a summary judgment shall be rendered if the pleadings, depositions and admissions show, together with the affidavits, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In this proceeding the

burden of proof is upon the movant; all doubts to the existence of a genuine issue as to a material fact must be resolved against it. Small v. Lang, 239 S.W.2d 441, Tex.Civ.App., Ft. Worth, 1951, writ refused, n. r. e.; De La Garza v. Ryals, 239 S.W.2d 854, Tex.Civ.App., Ft. Worth, 1951, writ refused, n. r. e.

■ Appellant, Alberta Penny Rich, advances the proposition that the enforcement of the California injunction judgment is through contempt proceedings. Appellant recognizes that under Art. 4, Sec. 1 of the U. S. Constitution and 28 U.S.C.A., sec. 1738, a valid and final judgment of one state will be enforced by a sister-state, but argues that as this relates to injunctions, "the doctrine means a contempt order may be enforced in one state arising from giving full faith and credit to a contempt order of a sister-state". This contention seems to present for the first time in Texas, the question of whether or not a permanent injunction of a sister-state is entitled to full faith and credit. We hold it is. In our opinion, insofar as the full faith and credit clause of the U. S. Constitution is concerned, there is no difference between an equitable decree and other judgments. We think the full faith and credit clause applies to all valid, final judgments of another state. Art. 4, Sec. 1 of the U. S. Constitution provides:

"Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

Sec. 1738, Title 28, U.S.C.A. provides for the method by which the records and judicial proceedings of any state or territory shall be authenticated, and then provides:

"Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and

credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken. * * * "

We do not find any language in either Sec. 1 of Art. 4 of the U. S. Constitution or Sec. 1738 of Title 28 U.S.C.A., that in our opinion could be construed as excluding permanent injunction judgments from being entitled to full faith and credit.

The general rule is that a judgment rendered by a court of one state may not be enforced in another state without the institution of an action thereon in the sister-state. 46 Am.Jur.2d, Judgments, Sec. 905, page 1038. See M'Elmoyle v. Cohen, 13 Pet. 312, 10 L.Ed. 177 (1839); Cole v. Cunningham, 133 U.S. 107, 10 S.Ct. 269, 33 L.Ed. 538 (1890); Huntington v. Attrill, 146 U.S. 657, 660, 13 S.Ct. 224, 36 L.Ed. 1123 (1892). However, in this state a child support decree is an exception to this rule. Guercia v. Guercia, 239 S.W.2d 169 (Tex.Civ.App., Waco, 1951), 150 Tex. 418, 241 S.W.2d 297, writ refused, n. r. e.

Professor Barbour of the University of Michigan said:

"It is difficult to see why in such a, matter as this the effect of an equitable decree should be different from that of a legal judgment. The doctrine that a cause of action is distinguished by or merged in a legal judgment results from the policy that there be an end of litigation. The same considerations of policy demand that equal effect be given to the equitable decree, and it is believed that this conclusion finds adequate support in the cases.

"Barbour, 'The Extra-Territorial Effect of the Equitable Decree,' 17 Mich. L.Rev. 527, 545 (1919)."

Of more recent origin are the comments of Willis Reese, Professor of Law, Columbia University, as found in Reese, "Full Faith and Credit to Foreign Equity Decrees", 42 Iowa L.Rev. 183 (1957). Professor Reese discussed the varying kinds of equitable decrees and the full faith and credit accorded by courts. As to the type of decree in issue here, we find this statement on page 196:

"We now come to the third category of equity decrees: Those which order the defendant to do, or refrain from doing, something else than pay money * * *. A Defendant has frequently been sought to be enjoined either from enforcing a judgment he has procured or from suing on an original claim. In actions of the first type, full res judicata effect has been given to the action taken by the original court."

Reese reaches the following conclusions at page 201:

"The full faith and credit clause and its implementing statute speak of 'judicial proceeding' without limitation and thus must surely include equitable decrees within their scope. Nothing in the nature of such decrees prevents them from receiving the protection of full faith and credit which requires that judgments should be given the same res judicata effect they enjoy at home * * *." See comment, "Full Faith and Credit to Foreign Injunctions," 26 U. of Chic.L.Rev. 633 (1958).

In the case of S. Jarvis Adams Company v. Knapp, 213 Pa. 567, 569–570, 62 A. 1112, 1113, where the Court of Common Pleadings of Allegheny County refused relief to a plaintiff in Pennsylvania for the alleged violation of a Federal Circuit Court decree and sought an order from the Pennsylvania court requiring defendant to purge himself of his contempt of the decree of the circuit court, and to make such amends for his violation thereof as may be just and proper. In that case the Supreme Court of Pennsylvania said:

"The specific relief asked for in the bill could not be given, for the reason that the court is without power to en-

force any but its own decrees, nor can it adjudge the decree of any other court binding, or punish for the violation of any except its own; but under the general prayer for relief the court could have enjoined the defendant against violating his agreement with the plaintiff not to engage, directly or indirectly, in the manufacture of pipe balls, or other specialities which he had agreed not to manufacture, and this much relief we think the plaintiff was entitled to under the evidence submitted."

There are other reasons why we think the judgment should be affirmed which we will hereinafter discuss.

The relief granted in the injunction decree here in question in all but the last provision of the trial court's judgment can be given effect only if the California judgment can support the Texas judgment. Appellant has made no objections to the form or substance of the foreign decree. That judgment recites that it is a stipulated judgment. In Milner v. Schaefer, 211 S.W.2d 600 (Tex.Civ.App., San Antonio, 1948, writ ref'd), involving a suit to enforce a settlement of realty set out in a Colorado judgment between partners, the court stated the following:

> " * * * In this State an agreed judgment is regarded as being in the nature of a contract. Plumly v. Plumly, Tex.Civ.App., 210 S.W.2d 177, and authorities therein cited; 25 Tex.Jur. 387, Secs. 25, 26. When an agreed judgment is pleaded a contract is likewise pleaded. We think the Colorado decree involved here is a judgment entitled to full faith and credit under the federal constitution, but if technically it be not a 'final judgment,' it is our opinion * * * that Milner, by valid contract, relinquished all claim to the Texas lands * * * and that the judgment of the trial court may be supported upon this theory." See Boman v. Gibbs, 443 S.W.2d 267, 274 (Tex.Civ.App., Amarillo, 1969, writ ref., n. r. e.), and authorities therein cited.

We think this is controlling here. Appellant has in effect judicially contracted by the uncontested California stipulated judgment and such "contract" will support the applicable parts of the judgment now before us.

Furthermore, even if this judgment cannot be given effect under the full faith and credit clause of the U. S. Constitution for any of the reasons herein stated, we find that the California judgment can be given credit under the doctrine of comity.

There has been a tendency to co-mingle the "Full Faith and Credit" clause, U.S.C.A.Constitution Art. 4, Sec. 1, with the doctrine of comity by cross-citing various cases between the two principles. Perhaps because of the nature of the principles involved this is by necessity. However two rules are apparent, (1) Where a decree is entitled to "Full Faith and Credit" a state court of the situs must give it credit, notwithstanding the state of the situs's public policy, Fauntleroy v. Lum, 210 U.S. 230, 28 S.Ct. 641, 52 L.Ed. 1039; Kenney v. Supreme Lodge of the World, Loyal Order of Moose, 252 U.S. 411, 40 S. Ct. 371, 64 L.Ed. 638; (2) Where " * * * the state of the situs as a matter of comity recognizes the rights upon which the decree of a sister state is based and decides that the enforcement of such rights does not violate any principle of public policy of the situs state * * *." McElreath v. McElreath, 162 Tex. 190, 345 S.W.2d 722 (1961). Credit under the U. S. Constitution being a "must", while credit under comity being a "may" or a standard the state is allowed to set. The following point is made in *McElreath*, supra:

> " * * * Comity, in the absence of a controlling decision by the United States Supreme Court under the 'Full Faith and Credit' clause, seems the preferable basis for a state court decision. In that way there is no danger of restricting the scope of state public policy by a prediction of what the United States Supreme Court may hold in any given situation.

Our holding therefore is that as a matter of comity we will enforce the equitable decrees of a sister state affecting Texas land so long as such enforcement does not contravene an established public policy in this State. * * * "

The California decree is in personam in nature in that appellant is ordered not to do the acts set out in the judgment. Personal service is shown to have been had in the California court. The Hornbook statement is made that while a definite judgment for a sum of money may be sued upon " * * * a valid foreign judgment that the defendant do or refrain from doing an act other than the payment of money will not be enforced by an action on the judgment", 47 Am.Jur.2d Judgments, page 45, Sec. 930. The "Full Faith and Credit" clause of the constitution does not recognize such a dichotomy; "Full Faith and Credit shall be given in each State to the public Acts, Records and judicial Proceedings of every other State", U.S.C.A.Constitution, Art. 4, Sec. 1, nor do we think the State of Texas recognizes such dual aspects in granting or denying comity.

In *McElreath* the Texas Supreme Court chose to enforce an equitable decree rendered in Oklahoma which ordered the defendant to convey Texas land. A majority of the court held that such decree was in personam, as is clearly the case here, and applied the doctrine of comity. The court made the following statement, "Professor Stumberg, while recognizing a diversity of opinion among courts, states that the decided weight of authority supports the proposition that the equitable decree of a sister-state should be recognized and enforced. Stumberg, Conflicts of Laws (2d Ed.) 125." We have found no statute of policy that would deny credit to the California judgment in Texas. Our conclusion is further given credence in cases of analogous situations that involve recognition of a sister-state's equitable decrees. Allee v. Van Cleave, 263 S.W.2d 276 (Tex.Civ.App., Galveston, 1953, n. w. h.) Wherein the court granted custody of a child under the

terms of a California judgment on the more restrictive Full Faith and Credit clause, the Texas Supreme Court approved under comity and public policy the enforcement by contempt of a sister-state's child support decree. Guercia v. Guercia, 239 S.W.2d 169 (Tex.Civ.App., Waco, 1951), 150 Tex. 418, 241 S.W.2d 297, writ refused, n. r. e.

■ Appellant offered no affidavit to oppose Mulford J. Nobb's (appellee's president) affidavit which had an attached copy of an advertising brochure showing appellant's use of the words "Banderin" and "Sculptress". This together with appellee's other uncontradicted affidavit the record before us shows no material fact issue on the restraint of appellant's use of "Sculptress" and "Banderin" as set out in the final provision of the trial court's judgment. Hence the sound rule is that a genuine issue of fact is not raised by mere pleadings, even a sworn one, when they are controverted by affidavits or other evidence, in absence of counter affidavits or evidence to sustain them. 4 McDonald Texas Civil Practice, Sec. 17.26; Sparkman v. McWhirter, 263 S.W.2d 832, 838, 839 (Tex. Civ.App., Dallas, 1954, writ ref'd); Savoy v. Graham Memorial Auditorium Association, Inc., 329 S.W.2d 352, 354 (Tex.Civ. App., Ft. Worth, 1959, n. w. h.); Rothchild v. Fannin Bank, 407 S.W.2d 878 (Tex.Civ.App., Texarkana, 1966, writ ref., n. r. e.); Rice v. Tuson Credit Union, 413 S.W.2d 833, 835 (Tex.Civ.App., Texarkana, 1967, n. w. h.); Goldsmith v. Cathey, 331 S.W.2d 358, 360 (Tex.Civ.App., Ft. Worth, 1960, writ ref'd, n. r. e.); Gulf, Colorado & Santa Fe Railway Company v. McBride, 159 Tex. 442, 322 S.W.2d 492, 500 (1958).

■ Appellant contends appellee cannot bring this suit in a Texas court under Art. 8, 18 T.B.C.A. (1955) which provides that a foreign corporation without a permit to do business in Texas cannot maintain any cause of action in any court of this state. Appellant cites the case of Anthony Miller,

Inc. v. Taylor-Fichter Steel Const. Co., Inc., 139 S.W.2d 657 (Tex.Civ.App., Beaumont, 1940, n. w. h.) where under old Art. 1529, Tex.Rev.Civ.Stat., the burden was on the foreign corporation to prove it had a permit where the suit on its face showed it was an intrastate cause of action. This is not the case before us. The record does not disclose that appellant was doing business of such a nature as to require a permit. Therefore, the burden was on appellee to show that the appellant was required to have a permit. Rosenthal v. American Photocopy Equipment Co., 333 S.W.2d 448 (Tex.Civ.App., Houston, 1960, writ dismissed); Truhe Box Company v. Jandrew, 346 S.W.2d 430 (Tex.Civ.App., San Antonio, 1961, writ ref'd, n. r. e.). Such burden was not met.

We have carefully considered each of appellant's points of error and are of the opinion that they present no reversible error and accordingly the trial court judgment is affirmed.

Judgment affirmed.