Jeanne Barnes **BRYANT**, as Liquidator of Anchorage Fire & Casualty Insurance Company, Appellant,

v.

**SHIELDS, BRITTON & FRASER,**
A partnership of professional corporations, Appellee.

No. 05–95–00196–CV.

Court of Appeals of Texas,
Dallas.

Aug. 29, 1996.

---

Harold B. Gold, Dallas, for appellant.

James D. Shields, Shields Britton & Fraser, Dallas, for appellee.

Before LAGARDE, BARBER [1] and HANKINSON, JJ.

## OPINION

HANKINSON, Justice.

Appellant Jeanne Barnes Bryant ("Bryant"), as Liquidator of Anchorage Fire & Casualty Insurance Company ("Anchorage"), appeals a judgment entered for appellee Shields, Britton & Fraser ("Shields") on Shields's suit on a sworn account. In two points of error, Bryant complains the trial court erred by: (1) entering a default judgment against Anchorage because Shields presented no evidence or insufficient evidence of service of citation on Anchorage or Bryant; and (2) overruling Bryant's motion to dismiss or stay the lawsuit in deference to earlier pending insurance receivership proceedings in Tennessee. Because we conclude the trial court erred in refusing to give the Tennessee receivership court's liquidation order full faith and credit, we reverse the trial court's judgment and remand the case to the trial court with orders to dismiss the lawsuit.

## BACKGROUND

On March 9, 1993, the Chancery Court of the State of Tennessee (the "Tennessee receivership court") entered an order granting petition for conservatorship (the "conservatorship order") for Anchorage, a corporation organized under the laws of Antigua.[2] The court entered the conservatorship order pursuant to the Tennessee Insurers Rehabilitation and Liquidation Act (the "Tennessee Act"), which provides for the rehabilitation and liquidation of insurers who have done business in Tennessee and insurers who have insureds resident in Tennessee. *See* TENN. CODE ANN. § 56–9–102(1)–(3) (1994).[3] The conservatorship order directed the Tennessee Insurance Commissioner, as conservator, to take possession of Anchorage's assets and to administer them under the court's supervision. The order also enjoined all persons from interfering with the conservatorship and from instituting or prosecuting actions against Anchorage.

---

1. The Honorable Will Barber, Justice, participated in the submission of this case; however, he did not participate in the issuance of this opinion due to his death on March 21, 1996.

2. The conservatorship order sets forth the grounds for placing Anchorage into conservatorship under Tennessee law. In December 1991, Anchorage contracted with United Physicians Risk Retention Group ("UPI") to reinsure some of UPI's medical malpractice risks. UPI paid Anchorage 1991 and 1992 premiums in excess of $5.95 million for excess of loss reinsurance and $250,000 defense cost coverage of $50,000 per insured. On March 17, 1992, UPI sued Anchorage in federal court for money damages and injunctive relief. UPI and Anchorage entered into an agreed judgment on April 3, 1992, requiring Anchorage to establish and fund a trust account in the amount of $5.5 million. Anchorage failed to establish and fund the trust account. The Tennessee receivership court placed UPI in liquidation on July 16, 1992. UPI filed a motion to adjudicate Anchorage for contempt. On March 3, 1993, the federal court enjoined Anchorage from withdrawing, transferring, disbursing, selling, or in any way disturbing all monies and securities owned by Anchorage at that time. To protect the policyholders of UPI and the public, the Tennessee receivership court placed Anchorage in conservatorship pursuant to Tennessee law.

3. All provisions were made effective by Acts 1991 and govern the Tennessee receivership court's orders.

Shields filed this lawsuit against Anchorage a day later on March 10, 1993. James Shields and the law firm of Shields, Britton & Fraser had represented an insured of Global Capital Assurance ("Global") in defense of a claim made against the insured. Global is also known as Anchorage. Shields represented Anchorage's insured from August 1992 until the parties resolved the case on March 4, 1993. Based on Anchorage's alleged failure to pay attorney's fees for the legal services it had provided to Anchorage's insured, Shields brought this suit on a sworn account and other causes of action, including Texas Insurance Code article 21.21–2 and common-law fraud claims. Shields sought damages in excess of $30,000, punitive damages, prejudgment and postjudgment interest, and attorney's fees.

Shields asserted in its petition that Anchorage had its principal office in Houston, Texas, was doing business in Dallas County, Texas, and could be served with citation by serving its registered agent, Darwin Seidel. On March 19, 1993, Shields had citation served on Darwin Seidel. Bryant denies that Seidel was Anchorage's registered agent for service of process.

On May 7, 1993, the trial court held a hearing. Shields advised the trial court that Anchorage had not answered Shields's petition. James Shields testified that the indebtedness on the sworn account was just and true and the amount owed was $30,170.52. He further testified that Shields had incurred $4,000 in attorney's fees for substantial discussions, correspondence, research, and briefing with the Tennessee conservator regarding the merits of its claim. The trial court then granted a default judgment that awarded Shields $30,170.52, $4,000 in attorney's fees, and prejudgment and postjudgment interest. The default judgment, however, was interlocutory only.

About a week later on May 13, 1993, the Tennessee receivership court entered an order of liquidation and permanent injunction (the "liquidation order") pursuant to the Tennessee Act. *See* TENN.CODE ANN. § 56–9–305 (1994). That order terminated efforts to rehabilitate Anchorage and authorized the liquidation of Anchorage's business. The liquidation order directed that the Tennessee Insurance Commissioner act as Anchorage's liquidator through Bryant, a Special Deputy Commissioner, and continued to vest her with possession and title to all Anchorage's assets, wherever located. The order also directed that all claims against Anchorage be brought using procedures established by Bryant. The liquidation order made permanent the temporary injunction, which was contained in the March 9, 1993 conservatorship order and enjoined all persons from interfering with the liquidation proceedings and from prosecuting actions against Anchorage.

On May 27, 1994, the trial court sent a notice calling the case to trial on July 5, 1994. On June 23, 1994, Bryant filed a motion requesting the trial court to dismiss or stay the suit on the grounds that the trial court should afford full faith and credit to the Tennessee receivership court's injunction against suits that interfered with the Anchorage liquidation proceedings.

On July 5, 1994, the trial court, before proceeding with the trial on Shields's remaining claims, heard Bryant's motion to dismiss. The trial court admitted into evidence certified copies of the conservatorship and liquidation orders and heard argument that it should dismiss or stay the lawsuit because the orders, including the injunction against the prosecution of claims against Anchorage, should be given full faith and credit. Bryant also argued that Shields had not served her with process, as the Texas Insurance Code. required. The trial court denied Bryant's motion to dismiss. Bryant then orally moved to dismiss the case for insufficiency and want of service of process. The trial court declined ruling on that motion and instructed Shields to present whatever testimony it wanted to make the interlocutory default judgment final. At the end of the hearing, Shields moved to nonsuit its punitive damages claim. The trial court granted the nonsuit and indicated that it would make the

interlocutory judgment a final judgment of default. On October 12, 1994, the trial court signed the final judgment.

### FULL FAITH AND CREDIT

██ Article IV, section 1 of the United States Constitution requires that each state give full faith and credit to the public acts, records, and judicial proceedings of every other state. U.S. Const. art. IV, § 1; *see Barber v. Barber*, 323 U.S. 77, 79, 65 S.Ct. 137, 138, 89 L.Ed. 82 (1944); *Bard v. Charles R. Myers Ins. Agency, Inc.*, 839 S.W.2d 791, 794 (Tex.1992). The full faith and credit clause requires that a valid judgment from one state be enforced in other states regardless of the other states' laws or public policies. *Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 716, 102 S.Ct. 1357, 1371–72, 71 L.Ed.2d 558 (1982); *Rich v. Con–Stan Indus.*, 449 S.W.2d 323, 327 (Tex. Civ.App.—Tyler 1969, no writ). A judgment rendered by a sister state is entitled to the same recognition and credit in Texas as it would receive in the state where rendered. *Bard*, 839 S.W.2d at 795 (citing *Starzl v. Starzl*, 686 S.W.2d 203, 205 (Tex.App.—Dallas 1984, no writ)). The laws of the state rendering the judgment determine its validity. *Bard*, 839 S.W.2d at 795 (citing *Baumgardner v. Southern Pac. Co.*, 177 S.W.2d 317, 319 (Tex.Civ.App.—El Paso 1943, no writ)). A judgment of one court controls the merits in another state's court only if the court in the first state had jurisdiction to render the judgment. *Underwriters*, 455 U.S. at 704, 102 S.Ct. at 1365–66.

██ The United States Supreme Court has afforded full faith and credit to injunctions against suits that may interfere with the receivership process. *Id.* at 691, 102 S.Ct. at 1358–59; *see also Brown v. Link Belt Div. of FMC Corp.*, 666 F.2d 110 (5th Cir.1982) (enforcing Louisiana state court injunction incorporating injunction by Illinois receivership court). Likewise, the states afford full faith and credit to injunctions entered by sister states prohibiting suits that may interfere with the receivership process. *See, e.g., Integrity Ins. Co. v. Martin*, 105 Nev. 16, 769 P.2d 69 (1989) (enforcing injunction by New Jersey receivership court); *Nasef v. U & I Invs., Inc.*, 91 Or.App. 344, 755 P.2d 136 (1988) (enforcing injunction by Indiana receivership court); *State ex rel. Low v. Imperial Ins. Co.*, 140 Ariz. 426, 682 P.2d 431 (Ct.App.1984) (enforcing injunction by California receivership court). Texas is one of those states.

In *Bard v. Charles R. Myers Insurance Agency*, 839 S.W.2d 791 (Tex.1992), the Texas Supreme Court addressed the full faith and credit issue in the context of insurance receivership proceedings. In that case, the Vermont Superior Court had placed an insurer in receivership and ordered liquidation of its assets. The final liquidation order enjoined suits against the insurer or the liquidator in Vermont or elsewhere. The terms of that order specifically enjoined counterclaims and provided procedures for filing disputed claims. The Vermont receivership court also appointed a special master in Texas to hear claims made by Texas residents against the insurer.

The liquidator filed an action in Texas against one of the insurer's agents, seeking monies allegedly owed to the insurer's estate for insurance policy premiums. The agent answered the suit and filed a counterclaim alleging the insurer's management conspired with the agent's competitor to prevent the agent from placing certain insurance risks with the insurer. The agent also filed a claim in Vermont, as required by the liquidation order. Because the Vermont court's order enjoining suits interfering with the Vermont liquidation process was a final, appealable order in Vermont, the Texas Supreme Court afforded the Vermont court's order full faith and credit and ordered the agent's counterclaim dismissed without prejudice to his rights in Vermont. *Id.* at 797.

### THE LIQUIDATION ORDER

██ Bryant argues in her second point of error that the trial court erred in failing to

afford the Tennessee receivership court's liquidation order full faith and credit and in overruling her motion to dismiss. She contends that the liquidation order satisfies all full faith and credit requirements and that to deny full faith and credit to the order will frustrate the orderly liquidation and distribution of Anchorage's assets through the Tennessee receivership proceedings. Shields responds by reurging the argument it made in the trial court that Bryant failed to meet the procedural prerequisites for a Texas court to afford the liquidation order full faith and credit. Shields also now challenges the finality and enforceability of the liquidation order.

### Procedural Prerequisites

Shields argues that Texas law requires evidence of compliance with the procedural requirements of the Uniform Enforcement of Judgments Act ("UEJA") before full faith and credit can be given to a foreign judgment. Shields concedes that, on June 28, 1993, it received notice that Bryant had "domesticated" the liquidation order, pursuant to the UEJA, in the 234th District Court of Harris County, Texas on June 21, 1993. Bryant, however, chose not to rely on the domesticated order during the trial court's hearing on its motion to dismiss and did not offer it into evidence.

■ Because Bryant failed to offer evidence at the hearing that she domesticated the liquidation order using UEJA procedures, Shields contends the trial court properly denied Bryant's motion to dismiss. *See* TEX.CIV.PRAC. & REM.CODE ANN. §§ 35.001–.008 (Vernon 1986). We disagree. Texas law provides more than one method to present an order or judgment from another state to a Texas court for enforcement under the full faith and credit provision of the United States Constitution. *See Walnut Equip. Leasing Co. v. Wu*, 920 S.W.2d 285, 286 (Tex.1996) (holding that filing of foreign judgment under UEJA results in enforceable Texas judgment on date judgment filed); *Farley v. Farley*, 731 S.W.2d 733, 735 (Tex. App.—Dallas 1987, no writ) (holding foreign

judgment properly admitted into evidence pursuant to Texas Rules of Evidence for full faith and credit consideration and recognizing 28 U.S.C. § 1738 as establishing uniform standard for introducing into evidence documents from judicial proceedings of another state for full faith and credit consideration).

At the hearing on her motion to dismiss, Bryant, apparently relying on the Texas Rules of Civil Evidence, offered a certified copy of the Tennessee receivership court's liquidation order. Shields did not object to the admission of that copy, and the trial court admitted it. Shields does not complain that the liquidation order was not properly authenticated or that the trial court should not have admitted it. We, therefore, conclude that once admitted, the liquidation order, whether authenticated or not, was properly before the trial court for full faith and credit consideration. *See Farley*, 731 S.W.2d at 735; *Fireman's Fund Am. Ins. Co. v. Patterson & Lamberty, Inc.*, 528 S.W.2d 67, 70–71 (Tex.Civ.App.—Tyler 1975, writ ref'd n.r.e.) (op. on reh'g).

### Standard of Review

■ Having decided the liquidation order was properly before the trial court, we now turn to the issue raised in Bryant's second point of error—whether the trial court erred in failing to give the liquidation order full faith and credit and in overruling her motion to dismiss. Whether the trial court erred in failing to afford the liquidation order full faith and credit presents a question of law that we review de novo. *See Rumpf v. Rumpf*, 237 S.W.2d 669, 673 (Tex.Civ.App.—Dallas) (Bond, C.J., dissenting) (whether Minnesota divorce decree enforceable by Texas courts presents question of law under full faith and credit provision of the United States Constitution), *rev'd*, 150 Tex. 475, 242 S.W.2d 416, 416–17 (1951) (reaching same conclusion as that expressed by dissent); *see also In re Humphreys*, 880 S.W.2d 402, 404 (Tex.) (holding that questions of law are always reviewed de novo), *cert. denied*, —— U.S. ——, 115 S.Ct. 427, 130 L.Ed.2d 340 (1994).

### Finality

■ Full faith and credit is not required when a decree is interlocutory or subject to modification under the law of the rendering state. *Barber,* 323 U.S. at 81, 65 S.Ct. at 138–39; *Bard,* 839 S.W.2d at 794. Relying on this finality requirement, Shields argues that the conservatorship order was not a final order, and that as a result, it was not precluded from filing suit or taking the interlocutory default judgment against Anchorage. In her motion to dismiss, however, Bryant sought to enforce the permanent injunction contained in the liquidation order. We, therefore, need not consider the finality of the conservatorship order and instead consider whether the liquidation order is a final order in Tennessee. *See Bard,* 839 S.W.2d at 795 (law of state rendering judgment determines finality of judgment).

■ In the liquidation order, the Tennessee receivership court retained jurisdiction to effect the just and equitable discharge of the liquidation process. This continuing jurisdiction is necessary to enable the Tennessee receivership court to oversee the liquidation of the estate, as is its statutory duty. *See* TENN.CODE ANN. § 56–9–104(b) (1994). The fact that some parts of the order may be subject to modification does not affect the finality of other parts of the same order. *Bard,* 839 S.W.2d at 794; *see also* TENN.CODE ANN. § 56–9–307(f)(1)–(3)(B) (1994) (contemplating appeals from final orders of liquidation by providing for appeal pendency plan for continued performance of insurer's policy claims obligations).

The liquidation order contains no language indicating the permanent injunction against bringing or prosecuting suits is subject to modification. *See Bard,* 839 S.W.2d at 795. Rather, the intent of the Tennessee receivership court is clear from the terms of the order itself: claims against Anchorage are to be brought according to procedures set out in the liquidation order and in no other way. The injunction itself is fundamental to assuring that this single procedure is maintained. *See Bard,* 839 S.W.2d at 794. We conclude the liquidation order, including its permanent injunction, was a final order in Tennessee. *See id.* at 794–95.

### Enforceability

#### *Notice*

■ Relying on *Bard,* Shields also contends the liquidation order is not enforceable because the Tennessee receivership court never gave it notice and the opportunity to comment on either the conservatorship or liquidation orders before the orders were entered. *See Bard,* 839 S.W.2d at 793. In *Bard,* the Vermont court gave notice and the opportunity to comment on the proposed order for liquidation to interested parties, including the agent. *Id.* We do not agree that the enforceability of the liquidation order in *Bard* turned on whether the agent received notice and the opportunity to comment on that order. *See id.* at 794–97. The Texas Supreme Court instead focused on the finality of the liquidation order in deciding whether it was an enforceable order. *Id.* at 794–95.

Furthermore, Shields cites no provision of the Tennessee Act requiring a claimant be given notice before liquidation orders are entered. *See id.* at 795 (validity of judgment determined by laws of state where it was rendered). Rather, the Tennessee Act provides that notice and a reasonable time to respond to the petition requesting entry of a liquidation order must be given to the insurer. TENN.CODE. ANN. § 56–9–402(b) (1994). The Tennessee Act requires that notice of the liquidation order itself be provided to potential claimants who are required to file claims with the liquidator. *See id.* § 56–9–311(a), (b). The liquidation order mandated that Bryant notify all known creditors of the claims process within twelve months of its entry.

Finally, by Shields's own admission, it received notice that Bryant filed the liquidation order in the Harris County, Texas district court immediately after its entry in Tennes-

see.[4] The notice Shields received also recited the name and address of Bryant, the appointed liquidator in Tennessee, as well as the name and address of her attorney in Texas.[5] Despite having received this notice, the record does not reflect that Shields filed any claim with Bryant or that it challenged the liquidation order for lack of notice or any other reason. Shields conceded during oral argument that it never contested any matter relevant to the liquidation order in the Tennessee receivership court.

▮ Even though it received notice of the order well over a year before the July 5, 1994 hearing and never contested the enforceability of that order, Shields nevertheless argued the trial court should not give the liquidation order full faith and credit. A party cannot escape the requirements of full faith and credit by asserting its own failure to raise matters clearly within the earlier proceeding. *Maxfield v. Terry*, 885 S.W.2d 216, 219 (Tex.App.—Dallas 1994, writ denied). Shields's decision not to contest the Tennessee receivership court's liquidation order in Tennessee cannot now serve as a defense to enforcing that order in a Texas court. *See Underwriters*, 455 U.S. at 709–10 & n. 16, 102 S.Ct. at 1368–69 & n. 16 (challenges to exercise of jurisdiction over asset may not be made in collateral attack on judgment, but in the rehabilitation proceeding itself or on direct appeal of rehabilitation proceeding that resulted in judgment for which full faith and credit sought). Because the liquidation order is a final, enforceable order in Tennessee, Texas courts must afford it full faith and credit. *See id.* at 714, 102 S.Ct. at 1370–71; *Bard*, 839 S.W.2d at 795.

### Terms of the Permanent Injunction

▮ Shields also argues the liquidation order's permanent injunction did not enjoin

foreign proceedings. We disagree. The liquidation order makes permanent the temporary injunction contained in the conservatorship order entered March 9, 1993, pursuant to section 56–9–105 of the Tennessee Act. *See* TENN.CODE ANN. § 56–9–105 (1994) (granting receiver broad injunctive powers to facilitate liquidation process and authorizing application for injunctive relief outside Tennessee). The March 9, 1993 conservatorship order provided that "all persons, firms, corporations and associations ... are prohibited and enjoined ... from interference with the conservator or the Conservatorship [and] from the institution or further prosecution of any actions or proceedings." The conservatorship order authorized the conservator to apply outside Tennessee for relief against interference. The conservatorship order also mandated that the conservator consider all litigation pending outside Tennessee and petition the courts having jurisdiction over that litigation for stays whenever necessary to protect Anchorage's estate. The liquidation order, therefore, expressly enjoined the prosecution of foreign proceedings against Anchorage, including this Texas proceeding.

### Timing

▮ Finally, Shields contends that the trial court correctly refused to dismiss the case, because the Tennessee receivership court entered the liquidation order after the trial court granted the interlocutory default judgment. A judgment is interlocutory when it determines less than all issues as to all parties and leaves something further to be determined and adjudicated by the trial court in disposing of the parties and their rights. *Perkins v. Springstun*, 557 S.W.2d 343, 344 (Tex.Civ.App.—Austin 1977, writ ref'd n.r.e.). On July 5, 1993, before it denied Anchorage's motion to dismiss, the trial court admitted the conservatorship and liquidation orders

---

4. We note that the record reflects Shields's attorneys and paralegals actually discussed the conservatorship order with the Tennessee conservator and that Shields accumulated over $4,000 in attorney's fees related to the conservatorship order before the trial court entered the interlocu-

tory default judgment. The judgment includes an award of those fees.

5. The liquidation order itself required Bryant to defend claims against Anchorage filed in the Tennessee receivership court.

into evidence. By its terms, the permanent injunction contained in the liquidation order prohibited the "further prosecution of any actions" against Anchorage.

The trial court had notice of this final, enforceable injunction against the further prosecution of claims against Anchorage at that time—when the judgment was still interlocutory and before it entered the final judgment. The trial court, therefore, should have vacated the interlocutory default judgment and dismissed Shields's lawsuit. *See Underwriters,* 455 U.S. at 714, 102 S.Ct. at 1370–71; *Bard,* 839 S.W.2d at 794. If we did not so hold, the tasks of providing for this insolvent company's liquidation and preserving its remaining assets could not be accomplished and claims could not be paid equitably, because Bryant would be forced to defend lawsuits in any state, whether brought before or after the Tennessee receivership court entered the liquidation order. *See Bard,* 839 S.W.2d at 796–97 (recognizing benefit and necessity of requiring all claims against insolvent insurer's estate to be adjudicated in receivership proceedings to ensure fair and consistent treatment of all claims). This result would directly conflict with the purpose of the Tennessee Act. *See* TENN.CODE ANN. § 56–9–101(d) (1994) (purpose includes protecting interests of insureds, claimants, creditors, and the public generally by facilitating cooperation between states).

Because the trial court should have afforded full faith and credit to the liquidation order, including the permanent injunction, we conclude the trial court erred in overruling Bryant's motion to dismiss and in making the interlocutory default judgment a final judgment. We sustain Bryant's second point of error.

### SERVICE OF PROCESS

Bryant's first point of error challenges the entry of the interlocutory default judgment by contending that substituted service pursuant to article 1.36 of the Texas Insurance Code controlled service of process in this case and that Shields did not properly plead or prove substituted service under that statute. The interlocutory default judgment Bryant challenges in this point of error was merged into the final judgment. *See Radelow–Gittens Real Property Management v. Pamex Foods,* 735 S.W.2d 558, 560 (Tex. App.—Dallas 1987, writ ref'd n.r.e.). We have disposed of this appeal by sustaining Bryant's second point of error challenging that final judgment; therefore, we do not review Bryant's first point of error. *See* TEX.R.APP. P. 90(a).

We reverse the trial court's judgment and remand the case to the trial court with orders to dismiss Shields's lawsuit without prejudice to its rights in Tennessee.