NO. 12-03-00331-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
§APPEAL FROM THE 
IN THE INTEREST
§COUNTY COURT AT LAW
OF T.J., A CHILD
§CHEROKEE COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            The Attorney General of Texas appeals from a judgment denying full faith and credit to a
Michigan child support arrearage order against Jordan Jones. In three issues, the Attorney General
contends that the judgment is valid, enforceable, and entitled to full faith and credit. We reverse and
render.
 
Background
            Peggy and Jordan Jones were divorced in 1974 in Macomb County, Michigan. Under the
terms of the divorce decree, Jordan was ordered to pay weekly support for T.J., the couple’s minor
child, and a monthly service fee to the Friend of the Court while the support order was operative. 
Jordan failed to pay as ordered and subsequently moved to Texas. Michigan’s child support
enforcement agency forwarded a petition to enforce Jordan’s child support obligation. 
            The District Attorney for Cherokee County, Texas prosecuted the action and, in 1983,
obtained an arrearage order under the Texas Uniform Reciprocal Enforcement of Support Act
(URESA). The order included a finding that the amount of Jordan’s arrearage under the Michigan
divorce decree was $3,384.


 In 1988, the Attorney General initiated a proceeding to enforce the 1983
order. In that proceeding, the trial court found that, since 1983, Jordan had incurred an additional
arrearage of $1,307.13. The court then entered judgment for Jordan’s total arrearage, which
appeared to include the unpaid portion of the arrearage that was established by the 1983 order. On
May 6, 1991, a Release of Judgment Lien was filed in Cherokee County, Texas. The release
included recitals that the parties had settled the 1988 judgment and that the State of Texas released
and discharged the lien created by the judgment.
            In a letter to Jordan dated May 22, 1991, the Friend of the Court for the 16th Judicial Circuit
Court of Michigan acknowledged that she had received the release of lien. However, she informed
Jordan that the Texas order had not established the full amount of the Michigan arrearage. The letter
further informed Jordan that he still owed $5,536.89, which was the difference between the amount
established in Texas and the amount owed in Michigan.
            On January 22, 2002, the State of Michigan registered an authenticated and certified copy
of an arrearage order entered by the 16th Judicial Circuit Court of Macomb County, Michigan on
August 14, 2001 (the “2001 order”). The order included a finding that Jordan owed $8,847.24 in
unpaid child support and $374.75 in unpaid service fees. Further, Michigan included a certified copy
of the 1974 divorce decree, which was a default judgment of divorce. Jordan contested registration
of the 2001 order, stating that the alleged child support owed was for the period prior to 1984, that
a support order was entered and payments made pursuant to the 1983 Texas order, and that a Release
of Judgment Lien had been filed. Jordan also contended that the 2001 order was barred by
limitations in both Texas and Michigan.
            After a hearing on October 2, the trial court sustained Jordan’s contest to registration of the
order. At the Attorney General’s request, the trial court signed findings of fact and conclusions of
law on October 21. The Attorney General then filed a motion to modify, correct, or reform the
judgment or, in the alternative, for a new trial. After a hearing, the trial court granted a new trial,
which was held on June 5, 2003.


 
            Jordan’s current wife Judy was the sole witness at the June 5 hearing. She testified that, after
marrying Jordan in 1982, she kept the couple’s records and made the child support payments. She
admitted that there was a child support arrearage in 1983, but stated that, to the best of her
recollection, Jordan owed no back child support after 1988. According to Judy, the Attorney
General’s Office informed her that the arrearage was paid in full. A few months later, however, she
and Jordan received a letter from Michigan notifying Jordan that he still owed an arrearage. Judy
testified that she called the Attorney General’s Office six times regarding this letter. She also stated
that the Attorney General’s Office responded that the arrearage was paid. Moreover, Judy testified
that she called Macomb County, Michigan two or three times regarding the arrearage. She also
testified that, based upon her knowledge of the matter, she and Jordan had paid all of the back child
support due under the Michigan divorce decree. However, Judy provided no documentation to
support her testimony.
            Jordan’s attorney stated in closing argument that Michigan did not obtain service on Jordan
before obtaining the 2001 order. However, no documentation or other proof was offered in evidence
to support this statement. Jordan’s attorney also abandoned Jordan’s limitations defense and stated
that his purpose in the hearing had been twofold: (1) to determine whether back child support was
owed and (2) to determine whether the 2001 order was correct. 
            In announcing its ruling, the trial court stated that, under the facts presented, the United States
Constitution’s Full Faith and Credit Clause did not require recognition of the 2001 order. Thus, the
trial court ordered that the 2001 order not be registered as a judgment in Texas. Further, the trial
court adopted the findings of fact and conclusions of law previously signed on October 21, 2002. 
On June 11, the trial court signed an order incorporating its ruling denying registration of the 2001
order. However, the trial court, upon a request from the Attorney General, filed findings of fact and
conclusions of law that differed from those it had previously adopted. After the Attorney General
filed another motion to modify, correct, or reform, or, alternatively, for a new trial, the trial court
held a hearing, denied the motion, and entered an order incorporating its ruling. This appeal
followed.
 
Uniform Interstate Family Support Act
            Under the Uniform Interstate Family Support Act (UIFSA), a support order or income-withholding order issued by a tribunal of another state may be registered in this state for
enforcement.


 Tex. Fam. Code Ann. § 159.601 (Vernon 2002). A support order or income-withholding order issued in another state is registered when the order is filed in the registering
tribunal of this state. Tex. Fam. Code Ann. § 159.603(a) (Vernon 2002). The nonregistering party
seeking to contest the validity or enforcement of a registered order may, under section 159.607, seek
to vacate the registration, assert any defense to an allegation of noncompliance with the registered
order, or contest the remedies being sought or the amount of any alleged arrearages. Tex. Fam.
Code Ann. § 159.606(a) (Vernon 2002). 
            A party contesting the validity or enforcement of a registered order or seeking to vacate the
registration has the burden of proving one or more of the following defenses: (1) the issuing tribunal
lacked personal jurisdiction over the contesting party; (2) the order was obtained by fraud; (3) the
order has been vacated, suspended, or modified by a later order; (4) the issuing tribunal has stayed
the order pending appeal; (5) there is a defense under the law of this state to the remedy sought; (6)
full or partial payment has been made; or (7) the statute of limitation under section 159.604
precludes enforcement of some or all of the arrearages. Tex. Fam. Code Ann. § 159.607(a) (Vernon
2002). 
            If the contesting party does not establish a defense under section 159.607(a), the registering
tribunal shall issue an order confirming the order. Tex. Fam. Code Ann. § 159.607(c). The law of
the issuing state governs the nature, extent, amount, and duration of current payments and other
obligations of support and the payment of arrearages under the order. Tex. Fam. Code Ann.
§ 159.604(a) (Vernon 2002).
 
 
Personal Jurisdiction
            In its first issue, the Attorney General contends there is no evidence to support the trial
court’s finding (finding of fact number 23) that Jordan was not served with notice of the suit that
resulted in the 2001 order. Therefore, it concludes, the trial court could not deny full faith and credit
to the 2001 order on the ground that the Michigan court lacked personal jurisdiction of Jordan.
            A trial court’s findings of fact are binding on an appellate court unless they are so contrary
to the great preponderance of the evidence as to show a clear abuse of discretion. In re Ferguson,
927 S.W.2d 766, 769 (Tex. App.–Texarkana 1996, no writ). In the absence of such a clear abuse of
discretion, an appellate court should not substitute its judgment for that of the trial court. Id. In
argument, Jordan’s attorney claimed that Jordan was not served with notice of the 2001 Michigan
action. However, no evidence regarding lack of notice was admitted at the hearing nor is there any
such evidence in the record. Because there is no evidence to support the trial court’s finding that
Jordan was not served with notice of the Michigan suit, we conclude that the trial court abused its
discretion in making the finding. Therefore, the finding is not binding upon us.
            A party contesting the validity or enforcement of a registered order or seeking to vacate the
registration has the burden of proving that the issuing tribunal lacked personal jurisdiction over the
contesting party. See Tex. Fam. Code Ann. § 159.607(a). Because there was no evidence at the
hearing or in the record to support Jordan’s contention that he had not been served with notice of the
2001 Michigan action, he failed to prove that the Michigan court lacked personal jurisdiction over
him. See id. Accordingly, we sustain the Attorney General’s first issue.
 
Estoppel



            In its second issue, the Attorney General contends that the 2001 order is res judicata as to
Jordan’s estoppel defense in his registration contest because he chose not to assert estoppel as a
defense to the original action. The Attorney General also contends that the evidence was legally and
factually insufficient to support the trial court’s estoppel findings.
            “A judgment of a court having jurisdiction of the parties and of the subject matter operates
as res judicata, in the absence of fraud or collusion, even if obtained upon a default.” Morris v.
Jones, 329 U.S. 545, 550-51, 67 S. Ct. 451, 455, 91 L. Ed. 488 (1947) (quoting Riehle v. Margolies, 
279 U.S. 218, 225, 49 S. Ct. 310, 313, 73 L. Ed. 669 (1929)). A state must give another state’s
judgment the res judicata effect it would receive in the rendering state. Villanueva v. Office of the
Attorney Gen., 935 S.W.2d 953, 956 (Tex. App.–San Antonio 1996, writ denied) (citing Durfee v.
Duke, 375 U.S. 106, 109, 84 S. Ct. 242, 244, 11 L. Ed. 2d 186 (1963)); Mayfield v. Terry, 885
S.W.2d 216, 218 (Tex. App.–Dallas 1994, writ denied)). In Michigan, res judicata bars a subsequent
action between the same parties when the evidence or essential facts are identical. Sewell v. Clean
Cut Mgmt., Inc., 621 N.W.2d 222, 225 (Mich. 2001). Moreover, Michigan courts have barred, not
only claims already litigated, but every claim arising from the same transaction that the parties,
exercising reasonable diligence, could have raised but did not. Id.
            Estoppel is an affirmative defense in Michigan that must be stated in a party’s responsive
pleading or it is waived. See Mich. Ct. R. 2.111(F) (2), (3)(a) (2005). However, there is no
evidence in the record before us that Jordan pleaded estoppel in the 2001 suit. Because Jordan failed
to plead estoppel in the 2001 Michigan suit, we hold that he has waived it. See Mich. Ct. R.
2.111(F) (2), (3)(a) (2005).
            The trial court found, in its findings of fact numbers 15, 16, 17, 18, and 19, that Jordan relied
upon the representations of the Attorney General and Michigan. The trial court concluded that
Jordan relied upon the representations of Michigan and of the Attorney General that he had paid in
full all child support obligations owed (conclusion of law number 2). The trial court further
concluded (conclusion of law number 3) that Jordan’s reliance was that expected of a prudent man
under the same or similar circumstances. Finally, in its conclusion of law number 5, the trial court
stated that Texas was estopped from asserting Michigan’s claim. 
            As previously stated, Texas must give the Michigan order the res judicata effect it would
have in Michigan. See Villanueva, 935 S.W.2d at 956. Because Jordan waived estoppel as an
affirmative defense in the Michigan action, the 2001 order is res judicata in Texas as to estoppel. 
See Sewell, 621 N.W.2d at 225. Therefore, the trial court’s findings of fact 15, 16, 17, 18, and 19
and its conclusions of law 2, 3, and 5, pertaining to estoppel, are immaterial. Accordingly, we
sustain the Attorney General’s second issue.
 
Presumption of Validity
            In an unnumbered issue, the Attorney General contends that Jordan failed to establish that
the 2001 order was not final or enforceable or that Michigan lacked jurisdiction. Instead, according
to the Attorney General, Jordan’s contest was an attempted collateral attack on the 2001 order. The
Attorney General also challenges findings of fact numbers 21 and 24 and conclusions of law
numbers 6, 7, 8, 9, and 10.
            Article IV, section 1 of the United States Constitution requires that each state give full faith
and credit to the public acts, records, and judicial proceedings of every other state. U.S. Const. art.
IV, § 1; Bryant v. Shields, Britton & Fraser, 930 S.W.2d 836, 840 (Tex. App.–Dallas 1996, writ
denied) (citing Barber v. Barber, 323 U.S. 77, 79, 65 S. Ct. 137, 138, 89 L. Ed. 82 (1944)); Bard
v. Charles R. Myers Ins. Agency, Inc., 839 S.W.2d 791, 794 (Tex. 1992)). The Full Faith and
Credit Clause requires that a valid judgment from one state be enforced in other states regardless of
the laws or public policies of the other states. Bard, 839 S.W.2d at 794 (citing Underwriters Nat’l
Assurance Co. v. North Carolina Life & Accident & Health Ins. Guar. Ass’n, 455 U.S. 691, 714,
102 S. Ct. 1357, 1371, 71 L. Ed. 2d 558 (1982)); Rich v. Con-Stan Indus., 449 S.W.2d 323, 327
(Tex. Civ. App.–Tyler 1969, no writ)). A judgment rendered by a sister state is entitled to the same
recognition and credit in the enforcing state that it would receive in the state where rendered. Bard,
839 S.W.2d at 795. The validity of the judgment is determined by the laws of the state where it was
rendered. Id. 
            Even where the cause of action could not be entertained in the state of the forum, either
because it is barred by the local statute of limitations or contravenes local policy, the judgment
obtained in a sister state is entitled to full faith and credit. Williams v. North Carolina, 317 U.S.
287, 294, 63 S. Ct. 207, 211, 87 L. Ed. 279 (1942). Moreover, a state must give another state’s
judgment full faith and credit when the parties fully and fairly litigated the issue in the other state.
Villanueva, 935 S.W.2d at 956. While Texas courts have refused any presumption in favor of a
default judgment that is directly attacked by appeal, a presumption of validity has been applied in
collateral attacks. Minuteman Press Internat’l, Inc. v. Sparks, 782 S.W.2d 339, 342 (Tex.
App.–Fort Worth 1989, no writ). Whether a trial court erred in failing to afford an arrearage order
full faith and credit presents a question of law that we review de novo. Velez v. Mitsak, 89 S.W.3d
73, 79 (Tex. App.–El Paso 2002, no pet.); Bryant, 930 S.W.2d at 841.
            The judgment of a court of general jurisdiction of a sister state duly authenticated is prima
facie evidence of the jurisdiction of the court to render it and of the right that it purports to
adjudicate. Barber, 323 U.S. at 86, 65 S. Ct. at 141. The burden is on the party resisting the
judgment to establish that the court did not have jurisdiction to render it. State ex rel Clanton v.
Clanton, 807 S.W.2d 844, 846 (Tex. App.–Houston [14th Dist.] 1991, no writ). Moreover, the
presumption of a judgment’s validity can only be overcome by clear and convincing evidence that
the foreign court lacked jurisdiction over the person. Escalona v. Combs, 712 S.W.2d 822, 824
(Tex. App.–Houston [1st Dist.] 1986, no writ). 
            If the presumption of the sister state’s jurisdiction over the cause and parties is not overcome,
the Full Faith and Credit Clause of the Constitution precludes any inquiry into the merits of the cause
of action, the logic or consistency of the decision, or the validity of the legal principles on which the
judgment is based. Milliken v. Meyer, 311 U.S. 457, 462, 61 S. Ct. 339, 342, 85 L. Ed. 278 (1940).
Thus, the nature and amount of a claim may not be challenged or retried in the forum state nor may
a defense be set up that goes to the merits of the original controversy. Morris, 329 U.S. at 552, 57
S. Ct. at 456; Russo v. Dear, 105 S.W.3d 43, 46 (Tex. App.–Dallas 2003, pet. denied). Whatever
mistakes of law may underlie the judgment, it is “conclusive as to all the media concludendi.”
Milliken, 311 U.S. at 462, 61 S. Ct. at 342 (quoting Fauntleroy v. Lum, 210 U.S. 230, 237, 28 S.
Ct. 641, 643, 52 L. Ed. 1039 (1908)). 
            In findings of fact 21 and 24, the trial court found that, in a new action filed in July 2001, the
Attorney General filed suit under UIFSA requesting alleged child support payments reported to have
accrued before April 1983, additional interest, and administrative fees. Further, the trial court found
that the “overdue support” in the 2001 order is the same support alleged to have accrued prior to
1983. 
            In its conclusions of law, the trial court stated that to allow Texas to pursue the UIFSA claim
would be unconscionable and that equity demanded that Jordan be allowed to rely upon
representations made by the Attorney General both individually and in its capacity as the attorney
representing Michigan. Additionally, the trial court concluded that Texas should not now be allowed
to pursue the claimed arrearage under UIFSA, a statute not in existence when the claim arose, the
child was emancipated, or the 1988 judgment was satisfied in full. The trial court further concluded
that although Michigan claims its 2001 order is a new and independent claim that can be collected
pursuant to UIFSA, the allowance of such an argument is neither logical, feasible, nor believable
because the claim is based entirely and only upon the alleged arrearage in existence prior to 1983.
Finally, the trial court concluded that the 2001 order cannot be registered pursuant to the UIFSA
statute. 
            In his registration contest, Jordan did not introduce testimony or other proof that the
Michigan court lacked personal jurisdiction when it entered the 2001 order against him. See
Escalona, 712 S.W.2d at 824. Instead, Jordan challenged the nature and amount of Michigan’s
claim. Further, the trial court’s findings of fact determined the nature and amount of Michigan’s
claim and concluded that Texas was estopped to assert Michigan’s claim. Any challenge or
relitigation of the nature and amount of the claim or any defense that goes to the merits of the
original controversy is not allowed. See Morris, 329 U.S. at 552, 67 S. Ct. at 456; Russo, 105
S.W.3d at 46. Consequently, Jordan did not overcome the presumption of the validity of the 2001
order, and the trial court erred in permitting Jordan to collaterally attack the order. Accordingly, the
Attorney General’s issue regarding the presumption of validity is sustained.
 
Challenges to Other Findings of Fact and Conclusions of Law
            In addition to the issues discussed above, the Attorney General challenges an additional
eleven findings of fact and four conclusions of law made by the trial court on July 3. We interpret
the Attorney General’s challenge as an argument that the specified findings and conclusions cannot
withstand application of the standard of review and therefore cannot support the trial court’s order.
            As previously stated, a trial court’s findings of fact are binding on an appellate court unless
they are so contrary to the great preponderance of the evidence as to show a clear abuse of discretion.
In re Ferguson, 927 S.W.2d at 769. In the absence of such a clear abuse of discretion, an appellate
court should not substitute its judgment for that of the trial court. Id. An appellate court reviews
a trial court’s conclusions of law de novo. BMC Software v. Marchand, 83 S.W.3d 789, 794 (Tex.
2002). An appellant may not challenge a trial court’s conclusions of law for factual insufficiency,
but may review the trial court’s legal conclusions drawn from the facts to determine their
correctness. Id. Further, if the reviewing court determines that a conclusion of law is erroneous, but
the trial court rendered the proper judgment, the erroneous conclusion of law does not require
reversal. Id. 
            The Attorney General challenges the trial court’s findings of fact numbers 4, 5, 12, 15, 16,
17, 18, 19, and 20 and conclusions of law numbers 1, 7, and 9, insofar as they identify the Attorney
General as Michigan’s attorney or state that the Attorney General was the attorney for Michigan. 
In these findings of fact, the trial court found that the “Texas Attorney General” represented
Michigan as its attorney and identified the “Texas Attorney General” as Michigan’s attorney. 
Additionally, in its conclusion of law number 1, the trial court concluded that the Texas Attorney
General had been Michigan’s attorney at all times relevant to this case and subsequently referred to
the Texas Attorney General as Michigan’s attorney. Finally, in its conclusion of law number 7, the
trial court states that “[e]quity demands that [Jordan] be allowed to rely upon representations made
to him by the Office of the Attorney General of Texas both individually and in its capacity as
attorney representing the State of Michigan.”
            The nature of the relationship between the Attorney General and the State of Michigan
pertains to Jordan’s estoppel defense. Because we have held that Jordan waived his estoppel defense
by not asserting it in the Michigan action, we need not address these findings and conclusions. 
            In finding of fact number 11, the trial court found that, upon payment of the November 1990
support arrearage payment, Jordan had paid all ordered child support, including any interest or fees
accrued pursuant to the arrearage order. The Attorney General challenges this finding to the extent
it suggests that Jordan paid all back child support under all orders. 
            By its terms, the 1991 release pertained only to the lien created by the 1988 enforcement
order and did not relate to any additional arrearage under the Michigan divorce decree. The 1988
order appeared to include the balance of back child support payments due under the 1983 Texas
order. However, there is no evidence that Jordan paid all back child support, including any interest
or fees, under the original Michigan divorce decree. See In re Ferguson, 927 S.W.2d at 769. We
therefore conclude that finding of fact number 11 constitutes an abuse of the trial court’s discretion
and is not binding upon us. 
            Moreover, in finding of fact number 12, the trial court found that the1991 release expressly
released and forever discharged Jordan from the child support lien and judgment. The Attorney
General contends that the release was for settlement of the Texas order only and not Jordan’s liability
under any other order. As previously stated, the 1991 release expressly released and discharged
Jordan from the lien created by the 1988 Texas order only. No evidence to the contrary was
presented. Therefore, to the extent that the trial court found otherwise, it abused its discretion and
its finding is not binding upon us. See id.
            In conclusion of law number 4, the trial court concluded there was no reason to believe that
if Jordan had been notified of the alleged arrearage prior to November 19, 1990 and had such
arrearage been proven, he would not have paid all such alleged arrearage. There is no evidence to
support this conclusion of law because Judy did not testify that she would have paid the alleged
arrearage prior to 1990. Therefore, based on the facts presented, this conclusion of law is incorrect. 
            We have held that Jordan waived estoppel as an affirmative defense to the 2001 order and
therefore the trial court’s findings and conclusions relating to estoppel will not support its order. We
have also concluded that findings of fact numbers 11 and 12 and conclusion of law number 4 are not
binding on us because they are not supported by the record. For that reason, we hold that these
findings and conclusions will not support the trial court’s order. Accordingly, we sustain the
Attorney General’s challenge to these findings and conclusions.
 
Conclusion
            Jordan did not overcome the presumption that the 2001 order was valid. He also waived the
defense of estoppel by failing to present evidence that he had pleaded estoppel in the Michigan suit. 
Therefore, the trial court erred in refusing to accord full faith and credit to the 2001 order and
denying registration of the order. Moreover, because Jordan failed to establish any defense to the
registration contest under section 159.607(a) of the Texas Family Code, the trial court erred by
failing to issue an order confirming the 2001 order. See Tex. Fam. Code Ann. § 159.607(a). 
Accordingly, the judgment of the trial court is reversed and judgment rendered  that the Michigan
order be fully enforceable, as allowed by law, in Texas.
 
 
 
                                                                                                    DIANE DEVASTO 
                                                                                                                 Justice
 
 

Opinion delivered March 14, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.
































(PUBLISH)