MEMORANDUM OPINION AND ORDER
 

 FITZWATER, District Judge.
 

 The court vacates its January 22, 1996 memorandum opinion and order and substitutes the following memorandum opinion and order.
 

 Defendant moves to dismiss or stay this action, presenting a
 
 Colorado
 
 River
 
 [1]
 
 abstention question for resolution. Because the court holds that
 
 Colorado River
 
 abstention does not apply, the court denies the motion. Defendant also separately moves to dismiss or for summary judgment, contending that certain Tennessee state court orders that form the basis of plaintiffs eomplaint are void for lack of subject matter jurisdiction. For the reasons that follow, the court holds that defendant cannot challenge the subject matter jurisdiction of the Tennessee state court in this collateral proceeding. The court therefore denies the motion to dismiss or for summary judgment.
 

 I
 

 Defendant Surety Bank, N.A., formerly Texas Bank, N.A. (“Surety”) maintained several bank accounts on behalf of Anchorage Fire & Casualty Insurance Company a/k/a Global Capital Assurance Company, Ltd. (“Anchorage”). In March 1993 a United States District Court in Tennessee issued a temporary restraining order enjoining the withdrawal, transfer, or disposal of any money or securities owned by Anchorage. The temporary restraining order applied to three of the Anchorage accounts held by Surety.
 

 Thereafter, the Davidson County, Tennessee Chancery Court (“Chancery Court”) issued a conservation order (“Conservation Order”) placing Anchorage into receivership pursuant to the Tennessee Insurers Rehabilitation and Liquidation Act (“TIRLA”), TenmCode Ann. §§ 56-9-101 — 510 (1994). The Conservation Order directed plaintiff Tennessee Commissioner of Commerce and Insurance (the “Commissioner”) to marshall and conserve all assets of Anchorage. The Chancery Court later converted the conservation proceeding into a liquidation proceeding by issuing a liquidation order (“Liquidation Order”) empowering the Commissioner to take possession of all Anchorage assets within or outside the state of Tennessee.
 

 Subsequent to entry of the temporary restraining order and the Conservation Order, Surety filed a plea in intervention in
 
 United Shortline, Inc. v. MacGregor General Ins. Co.,
 
 No. 141146130-93 (Dist. Ct. of Tarrant County, 141st Judicial Dist. of Tex.). Surety alleged that certain reinsurance agreements and other correspondence between MacGregor General Insurance Company (“MacGregor”) and Anchorage indicated that
 
 *513
 
 Anchorage was entitled to insurance premium finance payments owed to MacGregor. Surety filed an action in interpleader to resolve potential multiple claims against it in the amount of $599,819.88, which Surety maintains represents the balance of two Anchorage accounts disputed in this case. As part of the interpleader action, Surety joined the Commissioner and Anchorage as defendants.
 

 The Commissioner filed the present action against Surety in this court, alleging various claims based on Surety’s transfer or withdrawal of Anchorage funds in violation of the temporary restraining order, the Conservation Order, and the Liquidation Order. The Commissioner seeks to recover a portion of the approximately $600,000 Surety has paid into court as part of its interpleader action, but he also alleges entitlement to approximately $2.6 million held in other Anchorage accounts maintained by Surety.
 

 Based on its contention that the inter-pleader action filed in Texas court represents a concurrent state action, defendant Surety now moves for dismissal or a stay of this action pursuant to the
 
 Colorado River
 
 abstention doctrine. In a subsequent motion to dismiss or for summary judgment, Surety contends the Chancery Court lacked authority to order the liquidation of Anchorage assets held outside the state of Tennessee. Because Surety held the Anchorage accounts in Texas, it maintains that the Tennessee court lacked subject matter jurisdiction to enter the orders. The Commissioner responds that Surety’s challenge to the Tennessee orders represents an impermissible collateral attack, that Surety has waived any challenge to the Tennessee orders, that judicial estoppel precludes Surety from objecting to the Chancery Court’s subject matter jurisdiction, and that the Chancery Court had jurisdiction to enter the orders.
 

 II
 

 Before the court considers the propriety of dismissing or staying a federal case while awaiting disposition of a state court action, it must first determine whether the federal and state cases are parallel.
 
 See Hartford Acc. & Indent. Co. v. Costa Lines Cargo Servs., Inc.,
 
 903 F.2d 352, 360 (5th Cir.1990). Cases are deemed parallel when they involve “the same parties and the same issues.”
 
 Id.
 
 (citing
 
 RepublicBank, Dallas, N.A v. McIntosh,
 
 828 F.2d 1120, 1121 (5th Cir.1987)). Even if the eases are parallel, “ ‘only the clearest of justifications’ will warrant the federal court’s staying of hand.”
 
 McIntosh,
 
 828 F.2d at 1121 (citing
 
 Colorado River,
 
 424 U.S. at 819, 96 S.Ct. at 1247).
 

 The court concludes that the instant case and Surety’s interpleader action are not parallel. In the present action, plaintiff alleges fraudulent conveyances, preferential transfers, conversion, fraud, negligence, and bad faith. Surety does not contend that the interpleader action involves any of these claims. In addition, plaintiff attempts to recover $2.6 million in connection with accounts not involved in Surety’s interpleader action. In view of this court’s “virtually unflagging obligation” to exercise jurisdiction,
 
 Colorado River,
 
 424 U.S. at 817-18, 96 S.Ct. at 1246-47, it opts to do so.
 

 Ill
 

 The court next addresses Surety’s contention that the court should dismiss this action, or enter summary judgment, on the basis that the Liquidation Order is void.
 

 A
 

 Surety contends that pursuant to the TIR-LA, the Chancery Court lacked subject matter jurisdiction to the extent it authorized the Commissioner to liquidate Anchorage assets located outside the state of Tennessee. Tenn.Code Ann. § 56-9-402(a) provides that “the commissioner may apply to the [Chancery Court] by verified petition for an order directing the commissioner to liquidate
 
 the assets found in this state
 
 of a foreign insurer or an alien insurer not domiciled in this state[.]” (Emphasis added). It is undisputed that Anchorage qualifies as an alien insurer, and that the disputed assets in this case are not located in Tennessee. Section 56-9-104(b) states that “[n]o court of [Tennessee] has jurisdiction to entertain, hear or determine any complaint praying for the dissolution, liquidation, ... [or] conservation ... of
 
 *514
 
 any insurer ... other than in accordance with this chapter.” Based on these provisions, Surety maintains that the Commissioner lacked the authority to order liquidation of Anchorage assets located outside of Tennessee.
 

 The Commissioner counters with several arguments. He argues that Surety lacks standing to challenge, or may not collaterally attack, the Liquidation Order, and that the doctrines of waiver and estoppel prohibit Surety from attacking the Liquidation Order. The Commissioner has filed a supplemental response in which he asserts that a filing that Surety made with the Securities and Exchange Commission judicially estops it from contesting jurisdiction. He also contends that the TIRLA authorizes the liquidation of an alien insurer’s assets located outside of Tennessee.
 

 B
 

 As a threshold matter, the court considers the standard under Tennessee law for attacking a Tennessee order on the basis of lack of subject matter jurisdiction. This court looks to the law of the state whose judgment is being enforced to make this determination. 28 U.S.C. § 1738 (“The records and judicial proceedings of any court of any ... State, Territory or Possession [of the United States] ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken.”)
 

 Because § 56-9-104(b) provides that no court has
 
 jurisdiction
 
 to entertain, hear, or determine a complaint “other than in accordance with [the TIRLA],” Surety contends that the Chancery Court’s alleged noneompliance with § 56-9-402(a) voids the Liquidation Order for lack of subject matter jurisdiction. The court disagrees.
 

 The principle that Surety advocates, if applied uniformly, would mean that any failure to comply with the TIRLA renders an order or judgment subject to collateral attack on the basis that the court lacked jurisdiction by failing to follow the TIRLA. This would permit even the smallest of legal errors to serve as a basis to void a court order, leading to undesirable uncertainty and unpredictability among businesses and other entities who must rely on the Chancery Court’s orders to make significant decisions themselves. There is a more reasonable interpretation of § 56-9-104(b) that does not render the Chancery Court’s orders vulnerable to such doubt. The mandate of § 56-9-104(b) that no court “has jurisdiction to entertain, hear or determine any complaint ... other than in accordance with this chapter” means that the TIRLA, as opposed to another statutory provision or common law doctrine, governs exclusively the liquidation and conservation of an insurer. As an act designed to promote interstate cooperation,
 
 see
 
 § 56-9-101(5), the TIRLA has the same general purpose as does the Uniform Insurer’s Liquidation Act, and the enactments of other states are in accord with this interpretation.
 
 See, e.g.,
 
 Fla.Stat.Ann. § 631.021(3) (West 1996) (A delinquency proceeding shall constitute “the sole and exclusive method of liquidating [and] rehabilitating ... an insurer.”); N.J.Stat.Ann. § 17:30c-3 (West 1996) (“Delinquency proceedings pursuant to this act shall constitute the sole and exclusive method of liquidating, rehabilitating, reorganizing, or conserving an insurer, and no court shall entertain a petition for the commencement of such proceedings, unless the same has been instituted by the commissioner.”).
 

 The court therefore holds that Surety’s jurisdictional argument is without merit.
 

 C
 

 Because the TIRLA does not specify the grounds for collateral attack, the court examines Tennessee jurisprudence.
 

 Based on
 
 Slaughter v. Louisville & Nashville R.R. Co.,
 
 125 Tenn. (17 Cates) 292, 143 S.W. 603 (1911), the Commissioner advocates that Tennessee law distinguishes between a court’s subject matter jurisdiction to appoint a receiver, and the scope of authority that a court may confer upon the receiver. The Commissioner maintains that Surety may collaterally attack the Chancery Court’s subject matter jurisdiction to appoint a receiver
 
 ab initio,
 
 but may not collaterally attack the scope of the receiver’s authority.
 
 See id.
 
 at
 
 *515
 
 298-99, 143 S.W. 603. Surety counters that
 
 Slaughter
 
 and the other cases on which the Commissioner relies are distinguishable because those courts possessed subject matter jurisdiction.
 

 Slaughter
 
 does appear to adopt the distinction advocated by the Commissioner. In
 
 Slaughter
 
 a federal court conferred power upon a receiver to bring a state court collection action, and the receiver filed suit.
 
 Id.
 
 at 294,143 S.W. 603. The state court defendant challenged the action on the ground that only the trustee could bring such an action, and that the federal court thus lacked authority to empower the receiver to bring the action.
 
 Id.
 
 at 293, 295, 143 S.W. 603. The
 
 Slaughter
 
 court declined to allow a collateral attack because “the scope of ... authority prescribed in the order of [the receiver’s] appointment [even if based on the erroneous construction of a statute] ... cannot be questioned in another tribunal.”
 
 Id.
 
 at 298-99,143 S.W. 603.
 

 It appears based on subsequent developments, however, that Tennessee does allow a collateral attack with respect to the scope of authority.
 
 See Brown v. Brown,
 
 281 S.W.2d 492, 499 (Tenn.1955). In
 
 In re Maddron
 
 1991 WL 135467, at *4 (Tenn.Ct.App. July 25,1991), the court stated:
 

 A judgment is subject to collateral attack where the want of jurisdiction is with respect to the subject matter, or where, although the court has jurisdiction of the parties and subject matter, the judgment is void for want of jurisdiction with respect to the power of the court to render the particular judgment or decree, as where the court, in entertaining jurisdiction and rendering judgment in a particular case, exceeds the powers conferred on it by constitutional or statutory provisions^]
 

 Additionally,
 
 Slaughter
 
 is distinguishable because it addressed the effect Tennessee would give to a federal bankruptcy order, whereas the present inquiry concerns the effect that a Tennessee court would give a Tennessee court order.
 

 Brown
 
 provides an example of a successful collateral attack when the court initially had jurisdiction over the subject matter. A husband filed for divorce, which the court granted. The court also required, however, that the husband pay alimony.
 
 Id.
 
 at 495. The relevant Tennessee statute expressly prohibited alimony in a case of the type in question.
 
 Id.
 
 at 498. The husband filed suit in a collateral proceeding, and obtained an injunction alleviating him from the alimony requirement. The Tennessee Supreme Court addressed whether the husband could attack the validity of the divorce decree in this collateral proceeding:
 

 The Circuit Court in this case had the general jurisdiction of the subject matter of divorce and alimony; but it could make no valid adjudication with reference thereto which was not within the powers granted to it by law. A distinction must be made in this regard between the mere
 
 erroneous exercise of a power granted, and the usurpation of power where none ex-
 
 ists____ The Circuit Court in this case exceeded the powers conferred upon it by law ... [because] [i]ts judgment awarding the wife alimony after granting the husband a divorce is not only beyond the powers conferred upon it by statute, but is also directly contrary to the mandate of the applicable statute.
 

 Id.
 
 at 499 (emphasis added) (citations omitted).
 

 The court discerns two principles from the foregoing Tennessee authorities: First, notwithstanding that a court possesses general jurisdiction of the subject matter— such as the Chancery Court had with respect to the conservation and liquidation of insurers — an order of the court may be subject to collateral attack when the court exceeds the powers conferred upon it by law. Second, Surety’s ability to attack collaterally the Liquidation Order hinges on whether the Chancery Court erroneously exercised power that it had been granted, or instead usurped power where none existed.
 

 The court has not located Tennessee precedent — nor has any been cited by the parties — that precisely draws the distinction between an erroneous exercise of power granted, and a usurpation of power. In
 
 Brown
 
 the Tennessee Supreme Court found a usurpation of power where a court had
 
 *516
 
 issued an order “directly contrary to the mandate of the applicable statute.”
 
 Id.
 
 at 499.
 

 In
 
 Matter of Edwards,
 
 962 F.2d 641, 644 (7th Cir.1992) (Fed.R.Civ.P. 60(b) ease), the Seventh Circuit addressed the analogous issue of when a judgment is “void” for lack of subject matter jurisdiction. Writing for the panel, Judge Posner reasoned that an egregious error represents a void judgment, whereas a reasonable error results in a finding that the court had jurisdiction to determine its own jurisdiction.
 
 See id. Edwards
 
 did not involve Tennessee law, but in the absence of controlling authority, the court looks to its analysis for its persuasive value. Combining the distinction drawn in
 
 Edwards
 
 with the fact that
 
 Brown
 
 found a usurpation of power in a case involving an egregious error, the court predicts that Tennessee would allow a collateral attack grounded on lack of subject matter jurisdiction only upon a showing that the initial tribunal committed an egregious error.
 

 D
 

 In order to prevail on its motion, Surety must therefore show that the Chancery Court committed an egregious error when it ordered the liquidation of assets outside of the state of Tennessee.
 

 The TIRLA provides that “[i]f it appears to the court that the best interests of creditors, policyholders and the public so require, the [Chancery Court] may issue an order to liquidate
 
 in whatever terms it deems appropriate.”
 
 Tenn.Code Ann. § 56-9-402(c). (Emphasis added). After considering the relevant interests, the Chancery Court expressly found that those interests justified the liquidation of all assets.
 
 [2]
 

 The Commissioner relies on provisions of the TIRLA stating that the Act should be liberally interpreted to protect the public.
 
 See
 
 Tenn.Code Ann. § 56-9-101(e)-(d). He urges that the provision of the TIRLA that grants the Chancery Court authority to order liquidation of any assets “in whatever terms it deems appropriate” permits the court to liquidate any assets that it deems necessary, including assets located outside of Tennessee. The Commissioner also argues that because the Chancery Court had authority to issue a
 
 conservation
 
 order covering out-of-state assets, it would not make sense to limit the Chancery Court’s authority to issue a
 
 liquidation
 
 order to in-state assets.
 

 Surety has advanced compelling arguments in opposition, and the court’s own reading of the TIRLA as a whole leaves it with threshold questions concerning the Chancery Court’s authority regarding liquidation of non-Tennessee assets. For purposes of the present motion, however, the court need not decide the merits of the parties’ respective arguments. The question presented is whether the Chancery Court committed an egregious error when it ordered the liquidation of assets outside of the state of Tennessee. The arguments in support of the Liquidation Order have sufficient weight that this court cannot say that the Chancery Court committed an egregious error. Accordingly, assuming
 
 arguendo
 
 that the Chancery Court erred in liquidating out-of-state assets, the error is a mistaken interpretation of the law rather than a usurpation of power. Such an error would permit an aggrieved party to challenge the order directly through appropriate appellate mechanisms in the Tennessee courts, but does not subject the Liquidation Order to collateral attack in this court.
 

 The court therefore rejects Surety’s contention that the Chancery Court lacked subject matter jurisdiction to issue the Liquidation Order, and denies Surety’s motion to
 
 *517
 
 dismiss.
 
 [3]
 

 SO ORDERED.
 

 [1]
 

 .
 
 Colorado River Water Conserv. Dist. v. United States,
 
 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).
 

 [2]
 

 . The Chancery Court made the following finding:
 

 That Respondent Anchorage is beyond rehabilitation or conservation. The Conservator believes that an Order of Liquidation should be ordered forthwith in order that the Commissioner ... may reduce to possession and liquidate all assets of Respondent Anchorage for the protection and best interests of policyholders, creditors and the public in order that they take all other steps necessary to wind up the business of Anchorage without further delay.
 

 D.Mot.Ex.B. (Liquidation Order at ¶ 11);
 
 see also
 
 Liquidation Order at ¶ 1 (holding that court had jurisdiction pursuant to § 56-9-402).
 

 [3]
 

 . Because the court holds that Surety cannot attack the subject matter jurisdiction of the Chancery Court, the court need not address the Commissioner’s remaining arguments.