Jeanne Barnes BRYANT, as Liquidator of Anchorage Fire & Casualty Insurance Company, Petitioner,

v.

UNITED SHORTLINE INC. ASSURANCE SERVICES, N.A. and Surety Bank, N.A., Respondents.

No. 97–0093.

Supreme Court of Texas.

Argued Nov. 3, 1997.

Decided May 8, 1998.

Rehearing Overruled Aug. 25, 1998.

Harold B. Gold, Dallas, for Petitioner.

James D. Shields, Dallas, Kleber C. Miller, Sterling W. Steves, Richard G. Williams, Christopher G. Lyster, Fort Worth, Jerome H. Ferguson, III, Lawrence E. Ackels, Joseph E. Ackels, Dallas, for Respondents.

ENOCH, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and GONZALEZ, SPECTOR and ABBOTT, Justices, join.

In this case, we consider whether a Tennessee chancery court order that gives that court exclusive jurisdiction over the assets of an insolvent insurer precludes a Texas lawsuit by a judgment creditor to satisfy the judgment from funds in a Texas bank, the ownership of such funds being in dispute. The court of appeals held that the Tennessee order exceeded the chancery court's jurisdictional limits, and therefore affirmed the trial court's refusal to enjoin or stay the Texas proceedings. We affirm the court of appeals' judgment, but for reasons different than those expressed in the court of appeals' opinion.

## I. BACKGROUND

### A. The Tennessee Liquidation Order

Anchorage Fire & Casualty Insurance Company ("Anchorage") is in liquidation in Tennessee. In March 1993, a Tennessee chancery court issued a conservation order placing Anchorage in receivership pursuant to the Tennessee Insurers Rehabilitation and Liquidation Act ("TIRLA"). TENN.CODE ANN. §§ 56–9–101 to –510 (1994). The conservation order directed the Tennessee Commissioner of Commerce and Insurance (the "Commissioner") to take possession of and administer Anchorage's assets; the order specifically authorized the Commissioner to act outside of Tennessee to marshal and conserve Anchorage's assets. The order also temporarily enjoined all persons from transferring or disposing of Anchorage's property, from interfering with the conservator or the conservatorship, from instituting or further prosecuting any actions or proceedings against Anchorage, and from obtaining preferences, judgments, attachments, or other liens against Anchorage or its assets.

The Tennessee court later converted the conservation order into a liquidation order, invoking section 56–9–402 of TIRLA as its jurisdictional basis. Section 56–9–402 allows liquidation of the "assets found in [Tennessee]" of a foreign or alien insurer not domiciled in Tennessee. TIRLA § 56–9–402. The liquidation order converted the temporary injunction into a permanent injunction. More importantly for purposes of this opinion, the order also empowered the liquidator to take possession of all Anchorage assets wherever located. The order named the Commissioner as the liquidator, and authorized him to act through petitioner Jeanne Barnes Bryant (the "Liquidator").

### B. The USI Suit

Meanwhile, United Shortline, Inc. Assurance Services, N.A. ("USI") had a $2 million Florida judgment against MacGregor General Insurance Company ("MacGregor"), a foreign general casualty insurance company. Both MacGregor and Anchorage had assets on deposit with Surety Bank, N.A. (the "Bank") in Hurst, Texas. USI sued MacGregor in a Texas district court seeking to preserve MacGregor's assets, including those deposited at the Bank.

The Bank intervened in this action, interpleading several entities, including Anchorage and the state of Tennessee, with claims to the disputed assets. The funds at issue originated from the Bank's insurance premium financing business with MacGregor and Anchorage. The Bank was unsure about ownership of the disputed funds in part because of reinsurance agreements and correspondence between MacGregor and Anchorage suggesting that Anchorage may be entitled to insurance premium finance payments owed to MacGregor. The Bank had been collecting from insureds of both companies. The Bank deposited about

$600,000 into the registry of the court pending resolution of the conflicting claims.

The Liquidator moved to dismiss or stay, arguing that the Texas court should afford full faith and credit to the Tennessee liquidation order and require the Bank to adjudicate ownership of the disputed funds in the Tennessee liquidation proceeding. The trial court denied the Liquidator's motion to dismiss or stay and granted summary judgment for USI, awarding it the interpleaded funds.

The Liquidator appealed. The court of appeals affirmed in part and reversed in part the trial court's judgment. The court of appeals held that the liquidation order showed on its face that it was void for lack of jurisdiction, and therefore the trial court did not err in refusing to dismiss or stay the action. However, the court of appeals held that a fact question remained about ownership of the disputed funds. The court of appeals therefore remanded the case for trial.

The Liquidator asserts that the court of appeals erred in several respects. First, the Liquidator contends that the court of appeals should have held that the liquidation order. was entitled to full faith and credit, and that, so entitled, the order required that the USI lawsuit be dismissed or stayed. Second, the Liquidator argues that principles of comity require staying or dismissing the suit. Finally, the Liquidator urges that intervention by the Bank was improper and that the interpleader action was inappropriate. We take up these arguments in turn.

## II. FULL FAITH AND CREDIT

The United States Constitution requires each state to give full faith and credit to the public acts, records, and judicial proceedings of every other state. U.S. CONST. art. IV, § 1; *see also Barber v. Barber,* 323 U.S. 77, 79, 65 S.Ct. 137, 89 L.Ed. 82 (1944). Both the United States Supreme Court and this Court have held that the full faith and credit clause applies to orders placing insurance companies into receivership. *See Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guar. Ass'n,* 455 U.S. 691, 707, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982); *Bard v. Charles R. Myers Ins.*

*Agency, Inc.,* 839 S.W.2d 791, 795 (Tex.1992). In *Underwriters,* the United States Supreme Court noted that the full faith and credit clause requires only that an order be given the same effect in the sister state that it has in the rendering state; thus, a void order is no more enforceable in a sister state under the full faith and credit clause than it is in the rendering state. *See Underwriters,* 455 U.S. at 704 n. 10, 102 S.Ct. 1357 n. 10 ("One State's refusal to enforce a judgment rendered in another State when the judgment is void for lack of jurisdiction merely gives to that judgment the same 'credit, validity, and effect' that it would receive in a court of the rendering state.").

The parties vigorously contest how the full faith and credit clause should be applied in this case. The Liquidator contends that the liquidation order precludes the Texas action, as the order requires all claims against the estate or the property of the estate to be brought in the Tennessee liquidation court.

The Bank and USI respond that the liquidation order is void insofar as it purports to authorize the Liquidator to marshal assets located outside Tennessee. They argue that TIRLA gives the Tennessee court jurisdiction over only those assets of Anchorage located in Tennessee. *See* TIRLA § 56-9-402(a) (authorizing chancery court to order commissioner to liquidate "the assets *found in this state* of a foreign insurer or an alien insurer not domiciled in this state") (emphasis added). The court of appeals agreed with this argument, finding that the liquidation order "shows on its face that it was entered in excess of the jurisdiction granted to the court by [TIRLA]." The court of appeals therefore refused to give full faith and credit to the order. *Id.*

The Liquidator contends that such an argument is an improper collateral attack on the jurisdiction of the Tennessee chancery court, and that such an attack can be brought only on direct appeal in the Tennessee proceeding. Moreover, the Liquidator urges that TIRLA in fact affords jurisdiction to the Tennessee chancery court over Anchorage's assets located in other states. *See* TIRLA § 56-9-402(c) ("If it appears to the court

that the best interests of creditors, policy-holders and the public so require, the court may issue an order to liquidate *in whatever terms it deems appropriate*.") (emphasis added). The Texas Department of Insurance has filed amicus briefs in support of the Liquidator's position, arguing that there is a strong public policy interest in affording full faith and credit to liquidation proceedings in other states, and that this Court recognized such an interest in *Bard.*

We agree with the Liquidator and the Department of Insurance that Texas recognizes a compelling policy interest in having claims against an insolvent insurer's estate resolved in a single proceeding. *See Bard,* 839 S.W.2d at 797 (noting that adjudication in receivership proceedings of all claims against insolvent insurer's estate ensures "fair and consistent treatment of *all* claims"); *see also* TEX. INS.CODE art. 21.28, § 8. Thus, we have no difficulty in stating that, had the Bank or USI proceeded *against Anchorage or the Liquidator,* the full faith and credit clause may very well have necessitated dismissal of such a suit. *Bard,* 839 S.W.2d at 795. What is overlooked in the parties' and the amicus's arguments about the full faith and credit clause, however, is the fact that the action at issue—the Bank's interpleader of funds, the ownership of which is in dispute—is not within the scope of the Tennessee liquidation order.

■ We need not decide in this case whether TIRLA authorizes the Tennessee chancery court to order the Liquidator to marshal Anchorage assets located outside of Tennessee.[1] In this case, there has been no adjudication, in Texas or in Tennessee, that the funds at issue *belong to Anchorage.*[2] The liquidation order incorporates the conservation order, which by its terms applies to *Anchorage's property.* Thus, even if we assume that the Tennessee court had jurisdiction over Anchorage assets located in other states, we are still left with the fact that we do not yet know if the funds at issue even are Anchorage assets.

■ None of the parties contest the court of appeals' conclusion that the Bank's interpleader action is *quasi in rem.* The funds were located in Texas and the Bank tendered them into the Texas trial court's registry when it filed the interpleader. This gave the trial court jurisdiction over the funds to disburse them upon determining ownership. *See Northshore Bank v. Commercial Credit Corp.,* 668 S.W.2d 787, 789 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *cf. State v. Approximately $2,000,000.00 in United States Currency,* 822 S.W.2d 721, 726 (Tex.App.—Houston [1st Dist.] 1991, no writ) ("The general rule of in rem jurisdiction is the court's jurisdiction is dependent upon its control over the res."). Nothing about the Tennessee liquidation order precluded the trial court from exercising jurisdiction over the disputed funds, nor did the liquidation order purport to give the Tennessee court jurisdiction over funds located in another state that do not belong to Anchorage.[3]

The Liquidator argues that the result it seeks is compelled by two other decisions, one by the Dallas court of appeals in *Bryant v. Shields, Britton & Fraser,* 930 S.W.2d 836 (Tex.App.—Dallas 1996, writ denied), and the other by a United States District Court for the Northern Division of Texas in *Tennessee ex rel. Sizemore v. Surety Bank, N.A.,* 939 F.Supp. 511 (N.D.Tex.1996). We disagree.

In *Bryant,* the law firm of Shields, Britton & Fraser ("SBF") brought a direct action in Texas against Anchorage for fees allegedly incurred in representing an Anchorage insured. Relying on *Bard,* the Dallas court of

---

1. Accordingly, we neither approve nor disapprove the court of appeals' finding that TIRLA precludes the Tennessee chancery court from exercising jurisdiction over Anchorage assets located outside of Tennessee.

2. We express no opinion about the propriety of the court of appeals' reversal of the summary judgment awarding the funds to USI. Neither USI nor the Bank has asked this Court to review that portion of the court of appeals' opinion.

3. We note that section 64.003 of the Texas Civil Practice and Remedies Code provides that "[a] court outside this state may not appoint a receiver for: ... (2) property located in this state." TEX. CIV. PRAC. & REM.CODE § 64.003(2). Because of our disposition of this case, we need not determine whether or how this provision affects the Tennessee liquidation order.

appeals held that the liquidation order at issue in this case precluded SBF from bringing the Texas action, affording full faith and credit to the order. *Bryant,* 930 S.W.2d at 842–44.

We agree with the court of appeals' conclusion in this case that *Bryant* is easily distinguishable. SBF made a direct claim against the undisputed assets of Anchorage; such a claim directly contravenes the liquidation order. No such claim is made here. Rather, the issue here is ownership of disputed funds that were located in Texas and are now in the possession of the trial court.

*Sizemore,* although it involved the same parties and the same assets, also is not determinative of this case. In *Sizemore,* the federal district court addressed only whether the Tennessee chancery court exceeded its jurisdiction in ordering the liquidation of Anchorage assets outside the state of Tennessee, and whether the order could be collaterally attacked in a Texas court. *Sizemore,* 939 F.Supp. at 516. It is significant that in refusing to entertain a collateral attack on the Tennessee court's liquidation order, the court assumed for the purposes of its decision that the bank account funds were Anchorage assets. *Sizemore,* 939 F.Supp. at 516 ("assuming *arguendo* that the Chancery Court erred in liquidating [Anchorage's] out-of-state assets . . .").

Unlike the issues presented in *Sizemore,* the issue in this case is precisely whether the funds in the Texas court's registry *are* Anchorage's assets. The liquidation order simply has no application to these funds until they are shown to be Anchorage's. Accordingly, *Sizemore* is inapposite.

Finally, we note that nothing in our disposition of this case in any way conflicts with *Bard.* In *Bard,* a Vermont liquidation order required all claims, including counterclaims and set offs, against the insolvent insurer, Ambassador, or its liquidator to be brought in the Vermont receivership court. *Bard,* 839 S.W.2d at 792–93. The Vermont liquidator filed a claim on Ambassador's behalf in a Texas district court against Charles R. Myers Insurance Agency ("Myers"), seeking to recover monies allegedly owed for insurance policy premiums. Myers filed a counterclaim in the Texas action. The Vermont liquidator moved to dismiss the counterclaim on the ground that the Vermont order was entitled to full faith and credit, and that the order required the counterclaim against the liquidator to be brought in the Vermont receivership court. We held that the trial court should have dismissed the counterclaim without prejudice. *Id.* at 795–97. We noted that the fact that the Vermont liquidator brought suit in Texas to recover assets belonging to Ambassador did not allow Myers to defy the liquidation order by proceeding directly against Ambassador by way of counterclaim. *Id.* at 796.

Here, again, there was no direct action by the Bank against Anchorage, its assets, or the Liquidator. Rather, the Bank tendered funds to the registry of the court through an interpleader action to determine ownership of those funds. Nothing about this action violated the terms of the Tennessee liquidation order. Thus, there is no "full faith and credit" to be given. The assets at issue were located in Texas, and their ownership was unclear. The fact that the Liquidator has appeared in Texas to make a claim against the interpleaded assets does not make them Anchorage's assets; indeed, that is precisely the issue to be determined in the interpleader action. Unless and until such a determination is made, the Tennessee order does not apply. Under these circumstances, the trial court properly refused to dismiss or stay the lawsuit.

## III. OTHER ISSUES

### A. Comity

 The Liquidator argues that the trial court should have stayed or dismissed the lawsuit on comity grounds, contending that Texas courts should defer to the Tennessee court's exercise of jurisdiction over Anchorage's assets. We agree with the Liquidator that generally it is appropriate for courts to apply the comity doctrine where another court has exercised jurisdiction over the matter and where the states agree about the public policy at issue. *See Twin City Bank v. Mutual Fire Marine & Inland Ins. Co.,* 646 F.Supp. 1139, 1141–42 (S.D.N.Y.1986),

*aff'd*, 812 F.2d 713 (2d Cir.1987) (table). However, we see no reason for the doctrine to be applied here. Because we have found that the Tennessee court did not exercise jurisdiction over assets that do not belong to Anchorage, it would make no sense to find that the trial court erred in refusing to apply the comity doctrine in this case.

## B. Intervention

■ The Liquidator asserts that the Bank was not a proper intervenor because it had no legal or equitable interest in the USI lawsuit, and because the intervention complicated the case by excessively multiplying the issues. *See Guaranty Fed. Savings Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex.1990). We agree with the court of appeals that the Liquidator waived this argument by failing to move to strike the plea in intervention. *See id.* The Liquidator urges that the court of appeals elevated form over substance; she contends that she brought her opposition to the Bank's intervention to the trial court's attention through her plea to the jurisdiction, her answer, and her motion to dismiss or stay. However, these pleadings did not address the impropriety of intervention; rather, they put forth the Liquidator's general complaint that the action was brought in Texas rather than in the Tennessee liquidation court. The trial court did not err in failing to strike the intervention.

## C. Interpleader

■ Finally, the Liquidator complains that there was no basis for the interpleader action. However, there is no record evidence showing that the trial court abused its discretion in ruling that the interpleader action was appropriate. *See Danner v. Aetna Life Ins. Co.*, 496 S.W.2d 950, 953 (Tex.Civ.App.—Fort Worth 1973, no writ) ("Granting a party's right to interplead is within the sound discretion of the trial court."). We indulge every presumption in favor of the trial court's findings in the absence of a statement of facts. *See Commercial Credit Corp. v. Smith*, 143 Tex. 612, 187 S.W.2d 363, 365 (1945). Moreover, every reasonable doubt should be resolved in favor of the stakeholder's right to interplead. *See Petro Source Partners, Ltd.*

*v. 3–B Rattlesnake Ref. (1990), Ltd.*, 905 S.W.2d 371, 375 (Tex.App.—El Paso 1995, writ denied). Accordingly, we hold that the court of appeals did not err in affirming the trial court's ruling that the interpleader was appropriate.

\* \* \* \* \*

For the foregoing reasons, we affirm the court of appeals' judgment.

BAKER, Justice, filed a dissenting opinion, in which HECHT and OWEN, Justices, join.

HANKINSON, Justice, did not participate in the decision.

BAKER, Justice, joined by HECHT and OWEN, Justices, dissenting.

The Court concludes that Surety Bank's interpleader action in this case is not within the scope of the Tennessee liquidation order. To the contrary, I believe that it is and that the liquidation order should be afforded full faith and credit. Accordingly, I dissent.

## I. SCOPE OF TENNESSEE LIQUIDATION ORDER

The Court concedes that it would have no difficulty in stating that had the Bank or USI proceeded against Anchorage or the Liquidator, the full faith and credit clause may have very well necessitated dismissal of the suit. The Court concludes that the full faith and credit clause does not apply here because the interpleader action that is part of the USI suit is not within the scope of the liquidation order. The Court reasons that the ownership of the interpleader funds is in dispute and that the liquidation order only applies to claims against Anchorage's assets. However, I do not believe that the record supports the Court's reasoning. The Court simply mischaracterizes the record to reach its conclusion.

In its analysis, the Court ignores the fact that the record clearly shows that the accounts the Bank interpleaded were held in Anchorage's name. While the Bank may have been concerned about other parties claiming certain funds in the account, they

were clearly held in Anchorage's name. Accordingly, on the face of the record, the funds at issue belong to Anchorage. I do not express an opinion on the true ownership of the funds held in Anchorage's name or whether USI or McGregor have a legitimate claim to the funds. Rather, my sole intent is to point out that, on their face, the accounts were Anchorage's property, and that any claim a party may have against Anchorage to the funds in the account fall within the scope of the liquidation order.

The record shows that after the Bank interpleaded the Anchorage accounts into court, USI amended its pleadings to join Anchorage and the Liquidator as parties and to allege that it was entitled to the funds in the Anchorage accounts because

> it is entitled to recover from Anchorage or its Liquidator all sums that would otherwise be due MacGregor under any claim or any reinsurance agreement.... Any claim that Anchorage may have to the funds on deposit should be subordinated to USI's claim because any contract upon which Anchorage or its Liquidator may base a claim was not supported by consideration or failed in its consideration or was materially breached by Anchorage or its Liquidator or was in fraud of creditors of MacGregor ... and represent the fruits of such wrongful transfer.

This is the precise evil the liquidation order seeks to prevent—claims against Anchorage's assets outside of the receivership proceeding. Notably, USI dropped its claims against Anchorage and the Liquidator when the trial court rendered summary judgment awarding USI the funds. However, the court of appeals has reversed on that issue and USI may seek to reinstate its claims. Accordingly, there may be an issue about whether USI can assert a claim against Anchorage or the Liquidator. In *Bard v. Charles R. Myers Ins. Agency, Inc.*, 839 S.W.2d 791 (Tex.1992), the Court held that a party could not file a counterclaim against a receiver, even though the receiver initiated the suit. Thus, if USI has a claim against Anchorage, it may be precluded from asserting its claim in the interpleader action.

The record also shows that the Bank had actual knowledge of the Tennessee receivership proceedings. Over a month before the Bank filed its interpleader action, the Liquidator domesticated the Tennessee receivership order and served it on the Bank. Yet, despite the fact that the Bank knew Anchorage was in receivership, that proceedings were pending in Tennessee, and that any claims to Anchorage's assets had to be brought in the Tennessee receivership court, the Bank still chose to file its action in a Texas court.

In *Bard* this Court reinforced its strong commitment to enforce sister state's injunctions against interference with receivership proceedings. We expressly recognized "the benefit, if not the practical necessity, of requiring that all claims against the insolvent insurer's estate be adjudicated in the receivership proceedings to ensure the fair and consistent treatment of all claims." *Bard*, 839 S.W.2d at 797 (emphasis omitted). Requiring parties to make claims against receivers in a single receivership proceeding is instrumental in ensuring that all policyholders, claimants, and creditors are treated equally. *See Bard*, 839 S.W.2d at 796–97. The Court's conclusion that the Bank's interpleader action is not within the scope of the liquidation order does violence to this policy. Under the Court's interpretation of the liquidation order, parties could merely bypass receivership orders by filing interpleader actions instead of direct claims. Yet, this would "defeat the goal of state insurance insolvency statutes and would greatly increase the expense and complexity of insurance insolvency proceedings." *Bard*, 839 S.W.2d at 796.

The argument that the interpleader action is not within the scope of the liquidation order does not hold up under scrutiny. The Bank's interpleader action in this case clearly interferes with Anchorage's assets by allowing parties to attack Anchorage's ownership interest in its accounts. I conclude that the Bank's interpleader action is within the scope of the liquidation order.

## II. FULL FAITH AND CREDIT

As the Court correctly notes, both the United States Supreme Court and our Court

have recognized that full faith and credit applies to receivership orders. *See Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982); *Bard*, 839 S.W.2d 791. However, in *Underwriters*, the United States Supreme Court concluded that full faith and credit only requires courts to give judgments the same credit, validity, and effect that the judgment would have in the rendering state. *See Underwriters Nat'l Assurance Co.*, 455 U.S. at 704 n. 10, 102 S.Ct. 1357 n. 10. Thus, if a judgment is void and unenforceable in the rendering state, it void and unenforceable in all states.

Here, the Bank and USI claim that Texas courts should not give full faith and credit to the liquidation order because it is void. The Bank and USI contend that the Tennessee Chancery Court lacked jurisdiction to issue any order affecting Anchorage's assets that are outside Tennessee. The Liquidator responds that this is an impermissible collateral attack on the liquidation order.

The liquidation order here has already been challenged in two other suits. *See Bryant v. Shields, Britton & Fraser*, 930 S.W.2d 836 (Tex.App.—Dallas 1996, writ denied); *Tennessee ex rel. Sizemore v. Surety Bank, N.A.*, 939 F.Supp. 511 (N.D.Tex.1996). In *Bryant*, Shields, Britton & Fraser sued the Liquidator to recover on a sworn account. The Liquidator asserted that the trial court should afford full faith and credit to the liquidation order and dismiss the action. SBF countered by claiming that the liquidation order was not final or enforceable, and that the order did not enjoin foreign proceedings. The court of appeals disagreed with SBF and afforded the liquidation order full faith and credit. *See Bryant*, 930 S.W.2d at 844. I agree with the Court, however, that this case is distinguishable and of little help because SBF did not attack the Tennessee Chancery Court's jurisdiction to enjoin parties from interfering with assets outside of the state of Tennessee.

However, I again part ways with the Court because I believe that *Sizemore* is dispositive of this case. The Court's quote from *Sizemore*, 939 F.Supp. 511, shows that the Court seriously misreads what *Sizemore* stands for. In *Sizemore*, the district court does not assume that the assets are Anchorage's property. Rather, the district court, as evident by the Court's quote, merely assumes that the Tennessee Chancery Court erred in liquidating Anchorage's out of state assets. Moreover, the district court recognized that there was a potential dispute over the ownership of the funds and that the accounts were held in Anchorage's name. *See Sizemore*, 939 F.Supp. at 512–13. Yet, the district court still concluded that a collateral attack was not allowed. *See Sizemore*, 939 F.Supp. at 516. Thus, the Court's conclusion that "unlike the issue presented in *Sizemore*, the issue in this case is precisely whether the funds in the Texas court's registry are Anchorage's assets," is simply incorrect. 939 F.Supp. 511. *Sizemore* is directly on point. In *Sizemore*, not only did the district court review the exact issue presented here— whether the Bank can collaterally attack the liquidation order—but the case also involves the same interpleader action, the same liquidation order, and virtually the same parties. In *Sizemore* the district court conducted a thorough and extensive analysis on whether the Bank can collaterally attack the liquidation order. *See Sizemore*, 939 F.Supp. at 513–17.

In determining the validity of another state's judgments, courts looks to the rendering state's law. *See Bard*, 839 S.W.2d at 795. Tennessee Insurers Rehabilitation Act section 56–9–402(a) states that "the commissioner may apply to the [Tennessee Chancery Court] by verified petition for an order directing the commissioner to liquidate the assets found in this state of a foreign insurer or an alien insurer not domiciled in this state." TENN.CODE ANN. § 56–9–402(a) (1994). There is no dispute that Anchorage is a foreign insurer and that the assets involved in this case are outside the state of Tennessee. The court of appeals held that because the liquidation order did not strictly adhere to the statute, the Tennessee Chancery Court did not have jurisdiction to liquidate assets that were outside Tennessee and the order is void. However, it simply cannot be the case that any noncompliance with the

TIRLA statutory scheme causes an order to be void. If that were true, then even the most insignificant errors could be used to invalidate receivership proceedings. *See Sizemore*, 939 F.Supp. at 514.

Instead, the focus should be on whether Tennessee law allows collateral attacks on liquidation orders. The statute does not specify the grounds for collaterally attacking liquidation orders. Therefore, common law controls. Under Tennessee common law, court orders "may be subject to collateral attack when the court exceeds the powers conferred upon it by law." *Sizemore*, 939 F.Supp. at 515 (reviewing Tennessee case law). This does not mean though that a party can collaterally attack a judgment when a court erroneously exercises its power. Rather, the court must usurp power where none existed. *See Sizemore*, 939 F.Supp. at 515.

There does not appear to be Tennessee precedent drawing the distinction between an erroneous exercise of power and a usurpation of power. However, in an analogous case, the Seventh Circuit reasoned that only an egregious error results in a void judgment. *See Sizemore*, 939 F.Supp. at 515–16 (citing *In re Edwards*, 962 F.2d 641, 644 (7th Cir. 1992)). When the error is reasonable, the rendering court has jurisdiction to determine its own jurisdiction. *See Sizemore*, 939 F.Supp. at 516. Thus, in this case, to collaterally attack the liquidation order, the Bank and USI must show that the Tennessee Chancery Court committed an egregious error when it allowed for the liquidation of Anchorage's assets outside Tennessee. *See Sizemore*, 939 F.Supp. at 516.

TIRLA provides that "[i]f it appears to the court that the best interests of creditors, policyholders and the public so require, the [Tennessee Chancery Court] may issue an order to liquidate in whatever terms it deems appropriate." TENN.CODE ANN. § 56–9–402(c). Moreover, TIRLA states that the Act should be liberally construed to protect the public. *See* TENN.CODE ANN. § 56–9–101(c)–(d). In liberally construing the Act, the Liquidator insists that the Tennessee Chancery Court had the authority to order the liquidation of assets "in whatever terms

it deems appropriate," including liquidating assets outside Tennessee. Additionally, the Liquidator points out that under TIRLA courts have the authority to issue conservation orders affecting out-of-state assets. Thus, it does not make sense to limit courts' authority to issue liquidation orders affecting out-of-state assets. *See Sizemore*, 939 F.Supp. at 516.

The Bank and USI counter that TIRLA's specific language limits the Tennessee Chancery Court's authority to liquidating only assets inside Tennessee. While this is a strong argument, it is not necessary to decide which party is correct. Instead, the focus is whether, assuming it was error to allow liquidation of assets outside Tennessee, the error was egregious. *See Sizemore*, 939 F.Supp. at 516.

The Liquidator's arguments have credence and the extent of the Tennessee Chancery Court's jurisdiction is not clearly defined. Accordingly, I cannot conclude that the Tennessee Chancery Court's error, if any, was egregious. *See Sizemore*, 939 F.Supp. at 516. Thus, I would hold that any error by the Tennessee Chancery Court involves a mistaken interpretation of law, not a usurpation of power. The liquidation order is entitled to full faith and credit. The Bank and USI must to challenge the liquidation order in Tennessee.

## III. CONCLUSION

The Bank's interpleader action in this case is within the scope of the liquidation order. The Bank and USI cannot collaterally attack the validity of the order. Therefore, I would afford the liquidation order full faith and credit and dismiss the action.