

NUMBER 13-19-00042-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

KAYLA MARADIAGA, INDIVIDUALLY
AND AS REPRESENTATIVE OF
BORDER FINANCIAL SERVICES,
INC., D/B/A A-MEX, A-MEX II,
A-MEX III, AND CASH EXPRESS,                          Appellants,

v.

STEVE B. BECKER AND
EXEL BOBBINS & PLASTICS
COMPONENTS, INC.,                                      Appellees.

On appeal from the 357th District Court
of Cameron County, Texas.

# MEMORANDUM OPINION

Before Chief Justice Contreras and Justices Longoria and Perkes
Memorandum Opinion by Justice Longoria

Appellants Kayla[1] Maradiaga, individually and as representative of Border Financial Services, Inc., D/B/A A-Mex, A-Mex II, A-Mex III, and Cash Express appeals from a jury verdict finding appellants negligent and awarding damages to appellee Exel Bobbins & Plastics, Inc. (Exel). In four issues, appellants argue that the trial court erred by: (1) "disallowing the submission of settling defendants and designated responsible third parties to the jury;" (2) "keeping [Maradiaga, individually] and Border Financial Services, Inc. in the suit" despite neither owing Exel a common law duty; (3) allowing Exel to submit a common negligence theory of recovery to the jury; and (4) allowing suit to proceed when Maradiaga, individually, had corporate veil protection. We affirm.

## I.    BACKGROUND

Exel, and its owner Steven B. Becker, brought suit against appellants, Iris Yvonne Morales, David Barraza, Ruben Castillo, Jose Enrique Esparaza, Jr., Ashley Nicole Cuevas, and Robert Cuevas for conversion, fraud, conspiracy, negligence, and exemplary damages. Prior to trial, Esparaza, Ashley, and Robert settled with Exel. Castillo was dismissed by Exel as a party before the conclusion of evidence.

## A.    Testimony of Detective Eric Garza[2]

In October 2014, Becker contacted the Brownsville Police Department regarding fraudulent checks that had been cashed from Exel's business account. At the time, Becker believed Exel's accountant, Morales, was involved. More than $250,000 had been

---

[1] Appellant's name is also sometimes written as "Keyla" in the briefing and the record.

[2] Detective Garza's testimony is the only testimony included in the reporter's record of the trial as provided to this Court.  At the end of Detective Garza's testimony, the reporter's record states: "(End of the requested portion.)."

2

fraudulently withdrawn from Exel's account. Detective Eric Garza with the Brownsville Police Department investigated the claims.

Initially, Detective Garza discovered that Morales had written checks mainly to herself, her husband, Barraza, and Castillo. Castillo was a police officer with the Brownsville Police Department. Detective Garza stated that Castillo told him that Castillo was under the impression that Morales was giving him the checks with the permission of her boss, whose business was flourishing. After talking with Castillo, Detective Garza began to investigate the additional parties involved. In addition to Morales, Barraza, and Castillo, fraudulent checks were written out to approximately thirteen other people, amounting to over 500 fraudulent checks.

Detective Garza's investigation revealed that a majority of the fraudulent checks, totaling approximately $205,000, were cashed at A-Mex, a check cashing business operated by Maradiaga. He testified that he went to A-Mex to discuss the check cashing procedure in place, where he learned that A-Mex would verify the checks with the issuing company and, as long as they were verified, they would be cashed. In this case, Morales would verify the checks on behalf of Exel. A-Mex did not require the individual to whom the check was for to be the one to cash the check, but rather allowed Morales and Barraza to cash checks on another's behalf, without the intended recipient's knowledge that the checks had been written out to them. According to Detective Garza's testimony, there were two individuals who had no knowledge of or connection to Morales, Barraza, or Exel, yet their names were used on multiple checks. Detective Garza ascertained that both individuals had previously cashed legitimate checks at A-Mex in years prior.

3

Detective Garza interviewed Maradiaga, who said that that she believed Barraza was the owner of a construction company, and that he was allowed to cash the checks because they were made out to his employees. Because the bank never returned the checks to A-Mex or refused payment, Maradiaga did not see any problem continuing to cash the checks.

## B.     Verdict

The jury found that Maradiaga[3], individually and Border Financial Services, Inc. proximately caused the resulting loss to Exel. The jury also found that Exel proximately caused its own loss. The jury assigned 30% responsibility to Maradiaga; 30% responsibility to Border Financial Services, Inc.; and 40% responsibility to Exel. They did not find that Maradiaga or Border Financial Services, Inc. engaged in a conspiracy to harm Exel. However, they found that Maradiaga and Border Financial Services, Inc. were grossly negligent and awarded exemplary damages to Exel.

Appellants filed three motions for judgment non obstante veredicto (JNOV), which were denied. This appeal followed.

## II.     SUFFICIENT RECORD

Appellants raise issues of jury charge error and insufficient evidence concerning Maradiaga's personal liability. Exel responds that appellants have failed to provide a complete record, and therefore, we must presume that the judgment was supported by sufficient evidence. We agree with Exel.

The appellant bears the burden to bring forward on appeal a sufficient record to show the error committed by the trial court. *Huston v. United Parcel Serv., Inc.*, 434

---

[3] The completed jury verdict form spells Maradiaga's name as "Madariaga."

4

S.W.3d 630, 636 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (citing *Nicholson v. Fifth Third Bank*, 226 S.W.3d 581, 583 (Tex. App.—Houston [1st Dist.] 2007, no pet.)); *see also Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990) (per curiam) ("The burden is on the appellant to see that a sufficient record is presented to show error requiring reversal."). In the absence of a record containing the relevant evidence considered by the trial court in making its ruling, "[w]e indulge every presumption in favor of the trial court's findings." *See Bryant v. United Shortline Inc. Assurance Servs., N.A.*, 972 S.W.2d 26, 31 (Tex. 1998); *Willms v. Am. Tire Co.*, 190 S.W.3d 796, 803 (Tex. App.—Dallas 2006, pet. denied) ("[W]hen an appellant fails to bring a reporter's record, an appellate court must presume the evidence presented was sufficient to support the trial court's order."); *see also Huston*, 434 S.W.3d at 636 (holding that appellant's failure to obtain reporter's record containing ruling challenged on appeal made it impossible for appellate court to determine that trial court abused its discretion in making ruling).

Although the record contains what appears to be a partial record of the jury charge conference,[4] appellants have failed to provide the complete record of the charge conference. Furthermore, the record from the trial only contains the testimony of Detective Garza. Appellants did not provide this Court with the full trial record. The only additional records provided are a partial transcript of a hearing regarding the settling defendants, and a transcript of the hearing on appellants' motions for JNOV.

## A.    Jury Charge

---

[4] Volume III of the reporter's record is titled "Charging Conference," however, it appears to begin in the middle of the conference as the record states "(Beginning of the requested portion)" and begins with the trial court asking "Anything else?"

5

Appellants argue in issues one and three that the jury charge was erroneous. In reviewing a jury charge, we consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety. *De Leon v. Furr's Supermarkets, Inc.*, 31 S.W.3d 297, 300 (Tex. App.—El Paso 2000, no pet.). "We may not reverse unless the error, when viewed in light of the totality of the circumstances, amounted to such a denial of the rights of the complaining party as was reasonably calculated and probably did cause rendition of an improper judgment." *Id*.; *see* TEX. R. APP. P. 44.1(a).

Because appellants did not provide a complete trial record, we have no way of ascertaining what evidence the trial court considered when determining the jury charge. Accordingly, we must presume that the evidence supported the trial court's ruling, and we cannot say, based on this appellate record, that the trial court abused its discretion. *See Bryant*, 972 S.W.2d at 31; *Willms*, 190 S.W.3d at 806; *see also Huston*, 434 S.W.3d at 636 (holding, due to inadequate record, that appellant failed to preserve complaint); *Brazle v. Meadows on the Mews Owners Ass'n*, No. 14-10-01016-CV, 2011 WL 6141587, at *1 (Tex. App.—Houston [14th Dist.] Dec. 8, 2011, no pet.) (mem. op.) (per curiam) ("Unless an appellant arranges for the filing of a complete reporter's record (or partial reporter's record and accompanying statement of issues), we must presume that the proceedings support the trial court's judgment."). We overrule appellants' first and third issues.

## B.    Sufficiency of the Evidence

Appellants group issues two and four as a challenge to the sufficiency of the evidence, arguing that (1) there was insufficient evidence to prove that Maradiaga or Border Financial Services, Inc. owed any duty to Exel; and (2) there was insufficient

evidence to pierce the corporate veil protecting Maradiaga from liability individually. Again, because the entire record is not available for our review, we cannot rule on the sufficiency of the evidence. *See Andrews v. Sullivan*, 76 S.W.3d 702, 707 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.). Accordingly, we overrule appellants' second and fourth issues.

### III. CONCLUSION

The judgment of the trial court is affirmed.


NORA L. LONGORIA
Justice

Delivered and filed the
6th day of February, 2020.

7